JOHN A. AND SHIRLEY R. LARDAS, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

ANGELO A. AND JANET M. LARDAS, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket Nos. 29363–89, 30368–89.     Filed October 22, 1992.

*Steven B. Wolf* and *Albert L. Grasso,* for petitioners.
*Marjory A. Gilbert* and *William T. Derick,* for respondent.

OPINION

HALPERN, *Judge:* Respondent, by means of several notices of deficiency, determined deficiencies in income tax, additions to tax, and increased interest, as follows:

*John A. and Shirley R. Lardas—Docket No. 29363–89*

|  |  | *Additions to tax and increased interest* |  |  |
| --- | --- | --- | --- | --- |
| *Year* | *Deficiency* | *Sec. 6653 (a)(1)* | *Sec. 6661* | *Sec. 6621(c)* |
| 1983 | $69,295 | [1]$3,464.75 | $17,324 | [2] |
| 1985 | 49,043 | [1]2,452.15 | 11,603 | [2] |

*Angelo A. and Janet M. Lardas—Docket No. 30368–89*

Additions to tax and increased interest

| Year | Deficiency | Sec. 6653(a)(1) | Sec. 6661 | Sec. 6621(c) | Sec. 6651(a)(1) |
| --- | --- | --- | --- | --- | --- |
| 1983 | $14,857 | [1]$743 | $3,714 | [2] | - - - |
| 1984 | 19,642 | [1]982 | 4,911 | [2] | - - - |
| 1985 | 47,766 | [1]2,388 | 11,942 | [2] | - - - |
| 1986 | 23,048 | [3]17,319 | - - - | [2] | $4,385 |

[1] Plus 50 percent of the interest payable with respect to the entire deficiency under sec. 6653(a)(2).

[2] Respondent determined the entire deficiency to be a substantial underpayment attributable to a tax-motivated transaction, for purposes of computing interest.

[3] For the 1986 taxable year, sec. 6653(a)(1)(A) is applicable instead of sec. 6653(a)(1), and respondent also determined that sec. 6653(a)(1)(B) is applicable, which would add 50 percent of the interest payable with respect to the entire deficiency.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The sole question[1] for our decision is whether respondent's deficiency notices are untimely with respect to 1983 and 1985 to the extent that any assessments of deficiencies resulting from the disallowance of losses from property held in trust are barred because of the expiration of the period for making assessments. More specifically, we consider whether the relevant periods for making assessments are other than those applicable to petitioners.

The parties have submitted this case fully stipulated and there is no material dispute about the facts. All petitioners had their legal residence at Newport Beach, California, at the time of the filing of the petitions herein.

At the time the notices of deficiency were mailed to each set of petitioners, the period for assessment had not expired with respect to their individual income tax returns, because petitioners had consented to an extension of such period. At that time, more than 3 years had passed since the filing of information returns on behalf of the trusts in question. The

[1] These cases have been consolidated for purposes of trial, briefing, and opinion. We consider here a single issue which is common to both cases and, if favorably decided for petitioners, will be dispositive. If the issue is unfavorably decided for petitioners, the parties have settled some of the remaining issues and have agreed to be bound by the outcome of another case regarding the final remaining issue.

details of those ultimate findings are set forth in the appendix, which is attached to this opinion and incorporated herein. During the taxable years here under consideration, the trusts in question were so-called grantor trusts (grantor trusts).[2]

## *Discussion*

### I. *Introduction*

Section 6501(a), in pertinent part, provides that generally "the amount of any tax imposed by this title shall be assessed within 3 years after *the return* was filed". (Emphasis added.) The parties disagree as to which return is referenced by section 6501(a), where the taxpayer challenges a deficiency attributable solely to his investment by way of a grantor trust for which an information return must be filed pursuant to section 1.671-4(a), Income Tax Regs.[3] More generally, the question is whether the return referenced by section 6501(a) is that of the taxpayer or that of some "source entity" from which the taxpayer's disputed tax items derive. If the taxpayer's return is that referenced by section 6501(a), as respondent argues, then respondent will prevail, because the period for assessment had not, at the time the notices of deficiency were issued, expired as to petitioners' individual tax returns. If, however, the return referenced by section 6501(a) is that of the source entity—in this case the source entities are two grantor trusts—then petitioners argue that they should prevail, because the period for assessing those trusts had expired at the time the notices of deficiency were issued.[4]

---

[2] Subpt. E (secs. 671-679), pt. I, subch. J, ch. 1 of the Code contains provisions taxing income of a trust to the grantor or another person under certain circumstances, even though such person is not treated as a beneficiary under subpts. A through D (secs. 641-668) of such pt. I.

[3] Because we decide for respondent, we need not determine whether the information return filed by a grantor trust constitutes a "return" within the meaning of sec. 6501(a). See *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180 (1957) (information return filed by an ostensibly tax-exempt organization lacked the data necessary for computation of tax and therefore failed to constitute a return, within the meaning of the predecessor of sec. 6501(a)); *Commissioner v. Lane-Wells Co.*, 321 U.S. 219 (1944) (corporate income tax return filed by a personal holding company did not constitute a return). But see *Germantown Trust Co. v. Commissioner*, 309 U.S. 304 (1940) (fiduciary return filed by corporate taxpayer contained sufficient information for computation of tax and therefore constituted a return within the meaning of the predecessor of sec. 6501(a)). We assume, arguendo, that the information return filed by a grantor trust constitutes a "return" for purposes of sec. 6501(a).

[4] Because we decide for respondent, we need not address the question of whether, for purposes of the period of limitations on assessment, a grantor trust has an identity separate from that

## II. *The Tax Court Position*

We have held that the relevant return for determining whether, at the time a deficiency notice was issued, the period for assessment had expired under section 6501(a) "is that of petitioner against whom respondent has determined a deficiency". *Fehlhaber v. Commissioner,* 94 T.C. 863, 868 (1990) (Court reviewed), affd. 954 F.2d 653 (11th Cir. 1992). We have maintained that position consistently, without regard to the nature of the source entity involved. See *id.,* *Bufferd v. Commissioner,* T.C. Memo. 1991-170, affd. 952 F.2d 675 (2d Cir. 1992), cert. granted 505 U.S. ___, 112 S. Ct. 2990 (1992), and *Kelley v. Commissioner,* T.C. Memo. 1986-405, revd. and remanded 877 F.2d 756 (9th Cir. 1989) (subchapter S corporations); *Siben v. Commissioner,* T.C. Memo. 1990-435, affd. 930 F.2d 1034 (2d Cir. 1991) (partnerships); *Stahl v. Commissioner,* T.C. Memo. 1990-320 and 96 T.C. 798 (1991), and *Fendell v. Commissioner,* 92 T.C. 708 (1989), revd. 906 F.2d 362 (8th Cir. 1990) (complex trust); *Bartol v. Commissioner,* T.C. Memo. 1992-141 (grantor trust).

Recently, we reaffirmed our view that "'the relevant return for purposes of determining the statute of limitations is the return of the taxpayer against whom the tax is sought.'" *Bartol v. Commissioner, supra* (quoting *Bufferd v. Commissioner,* 952 F.2d 675, 678 (2d Cir. 1992), affg. T.C. Memo. 1991-170, cert. granted 505 U.S. ___, 112 S. Ct. 2990 (1992)). After consideration, we continue to hold that view.[5]

## III. *Does the Golsen Doctrine Require a Different Result?*

Petitioners argue that, under the doctrine of *Golsen v. Commissioner,* 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), the Ninth Circuit's holding in *Kelley v. Commissioner,* 877 F.2d 756 (9th Cir. 1989), revg. and remanding T.C. Memo. 1986-405, is controlling. Before reviewing the Ninth Circuit's holding in *Kelley v. Commis-*

---

of the grantor or other individual who is treated as having received or paid directly the items of the trust. See sec. 1.671-2(b) and (c), Income Tax Regs. For convenience in addressing the fundamental disagreement between the parties concerning the relevance of source entities generally, we will assume, without deciding, that the grantor trusts in question are source entities, separate and distinct from petitioners, for period of limitations purposes.

[5] We have set forth our reasoning on more than one occasion, see, e.g., *Fehlhaber v. Commissioner,* 94 T.C. 863 (1990) (Court reviewed), affd. 954 F.2d 653 (11th Cir. 1992), and we need not repeat it here.

*sioner, supra,* we will briefly outline the history and theory underlying the *Golsen* doctrine.

A. *Background: The Lawrence Doctrine*

Prior to enunciating the *Golsen* doctrine, we had considered what we should do when an issue comes before us a second time: after a Court of Appeals has reversed a prior Tax Court decision on the same point. In *Lawrence v. Commissioner,* 27 T.C. 713, 716-717 (1957), revd. 258 F.2d 562 (9th Cir. 1958), we determined that, while certainly we should seriously consider the reasoning of the reversing Court of Appeals, we ought not follow its decision if we believe it incorrect.

if still of the opinion that its original result was right, a court of national jurisdiction to avoid confusion should follow its own honest beliefs until the Supreme Court decides the point. The Tax Court early concluded that it should decide all cases as it thought right. [*Id.;* fn. refs. omitted.]

We continued:

The Commissioner of Internal Revenue, who has the duty of administering the taxing statutes of the United States throughout the Nation, is required to apply these statutes uniformly, as he construes them. The Tax Court, being a tribunal with national jurisdiction over litigation involving the interpretation of Federal taxing statutes which may come to it from all parts of the country, has a similar obligation to apply with uniformity its interpretation of those statutes. That is the way it has always seen its statutory duty and, with all due respect to the Courts of Appeals, it cannot conscientiously change unless Congress or the Supreme Court so directs. [*Id.* at 719-720.]

B. *Criticism of Lawrence and Emergence of the Golsen Doctrine*

The *Lawrence* doctrine has little to recommend it, however, where a case in the Tax Court is appealable to a Court of Appeals that previously has taken a position on precisely the same issue. In such a case, it would appear a virtual certainty that the nonprevailing party will appeal and secure a reversal from the Court of Appeals. In such a circumstance, the application of the *Lawrence* doctrine would ensure the waste of substantial resources, both of the taxpayer and of the court system, and, ultimately, achieve nothing.

Accordingly, we created, in *Golsen v. Commissioner, supra,* a narrow exception to the Lawrence doctrine. We there rea-

soned that, where a reversal would appear inevitable, due to the clearly established position of the Court of Appeals to which an appeal would lie, our obligation as a national court does not require a futile and wasteful insistence on our view.

Notwithstanding a number of the considerations which originally led us to * * * [the Tax Court's position], it is our best judgment that *better judicial administration* requires us to follow a Court of Appeals decision which is *squarely in point* where appeal from our decision lies to that Court of Appeals and to that court alone. [*Id.* at 757; emphasis added; fn. refs. omitted.]

It should be emphasized that the logic behind the *Golsen* doctrine is not that we lack the authority to render a decision inconsistent with any Court of Appeals (including the one to which an appeal would lie), but that it would be futile and wasteful to do so where we would surely be reversed. Accordingly, bearing in mind our obligation as a national court, see *Lawrence v. Commissioner, supra,* we should be careful to apply the *Golsen* doctrine only under circumstances where the holding of the Court of Appeals is squarely on point. See *Golsen v. Commissioner, supra* at 757.

### C. *Does the Golsen Doctrine Apply?*

#### 1. *Kelley v. Commissioner and the Ninth Circuit Position*

In *Kelley v. Commissioner,* 877 F.2d 756 (9th Cir. 1989), the Ninth Circuit considered whether "the return" referenced by section 6501(a) is that of the taxpayer or that of the source entity where the source entity is an S corporation. *Kelley* considered at length the proper interpretation of section 6037, a provision applicable to S corporations (but not to grantor trusts). The Ninth Circuit stated the issue as follows:

Section 6037 requires S corporations to file returns each year and provides that "[a]ny return filed pursuant to this section shall, for purposes of chapter 66 (relating to limitations), be treated as a return filed by the corporation . . . ." I.R.C. §6037. The parties dispute the meaning of this section. The Commissioner argues that this provision means that the statute of limitations is triggered by the filing of the informational return *only* if it is determined that the corporation itself owes a tax because of an invalid election or because one of the exceptions applies. * * * The taxpayers contend that the provision means that no adjustments can be made based on any item on the S corporation's return after the statute of limita-

tions has run on the corporation's return, even if the adjustment would create a deficiency only at the shareholder level. [*Id.* at 758.]

The Ninth Circuit determined that section 6037, on its face, would require a ruling for the taxpayers. "With certain inapplicable exceptions a corporation's income tax return cannot be questioned after three years from the date the return is filed. See I.R.C. §6501. A literal construction of section 6037 would similarly seem to bar adjustments to an S corporation's return after the three year period." *Id.* The Ninth Circuit then considered the legislative history of section 6037 to determine whether it sufficiently undermines the literal construction to require a different construction, and concluded that it does not.

This Senate Report does not indicate that section 6037 means the S corporation's return is treated as a corporate return only if the corporation itself is determined to owe tax. * * * If Congress had intended the example to swallow the language of the text, Congress could easily have written the statute to provide that the period of limitations will run from the date of filing of the return required under section 6037 *only* in instances of a subsequent determination that a corporation was not entitled to the benefits of subchapter S. [*Id.* at 759.]

We believe that the Ninth Circuit thought it inconsistent to allow an adjustment to the return of a shareholder of an S corporation, for an item of the S corporation, after the period of limitations to make adjustments to the return of the S corporation had expired.[6] Accordingly, the Ninth Circuit held that the IRS may not adjust a shareholder's return based on an adjustment to an S corporation's return when the period of limitations has run on the latter's return. *Id.*

At the very least, therefore, *Kelley* stands for the proposition that, in light of section 6037, the return referenced by section 6501(a) is not that of the taxpayer, but that of the source entity, where the source entity is an S corporation. *Id.* It is not clear, however, how the Ninth Circuit would interpret section 6501(a) in the absence of any interplay with sec-

---

[6] *Kelley v. Commissioner*, 877 F.2d 756, 759 (9th Cir. 1989), revg. and remanding T.C. Memo. 1986-405 ("The language of section 6501 * * * indicates that the tax imposed (in the case of an S corporation the tax owed by the shareholder on account of the S corporation's activities) must be assessed within 3 years after the filing of *some* return, but does not indicate whether the relevant return is the taxpayer's or the corporation's"). The Ninth Circuit then concluded that the return in question was that of the S corporation.

tion 6037—that is, where the source entity is not an S corporation (and, as a result, section 6037 is inapplicable).

Three possible viewpoints (at least) could be consistent with *Kelley*. First, it might be the Ninth Circuit's view that the return referenced by section 6501(a) is always that of the source entity. That conclusion might be reached in two steps: One, the return referenced by section 6501(a) must either be (i) always that of the taxpayer, or (ii) always that of the source entity;[7] two, since section 6037 makes clear that, where the source entity is an S corporation, the return referenced by section 6501(a) is that of the source entity, the return in question cannot always be that of the taxpayer and, consequently, must always be that of the source entity (except, perhaps, for those source entities never liable for Federal income tax). It should be emphasized that, under that view, section 6037 merely illuminates, but does not modify, the meaning of section 6501(a).

Second, it might be the Ninth Circuit's view that section 6037 modifies section 6501(a), whose reference to "the return", otherwise, would always signify that of the taxpayer. Under that view, the return referenced by section 6501(a) is always that of the taxpayer, except that section 6037 imposes a narrow exception to that rule, applicable only when the source entity is an S corporation.

Third, the Ninth Circuit may have declined to decide what return might generally be referenced by section 6501(a) where the source entity is not an S corporation: the Ninth Circuit may have reasoned that, even assuming, arguendo, that section 6501(a) generally refers to the taxpayer's return, section 6037 modifies that rule where the source entity is an S corporation. In other words, the Ninth Circuit may have decided that, due to section 6037, S corporations present an easy case—and hard cases may be left for another day.

Unfortunately, we cannot definitively say which, if any, of the above viewpoints is that of the Ninth Circuit.

---

[7]Perhaps, under that theory, some exception would be made for source entities that, under no circumstance, are liable for Federal income tax. Partnerships and pure grantor trusts are never liable for Federal income tax. *Stahl v. Commissioner,* 96 T.C. 798 (1991); *Bartol v. Commissioner,* T.C. Memo. 1992-141.

## 2. *Is Kelley Squarely on Point?*

We must consider whether *Kelley v. Commissioner,* 877 F.2d 756, 759 (9th Cir. 1989), revg. and remanding T.C. Memo. 1986-405, is so clearly on point that it would be futile to decide this case as we think right. As stated, we think the scope of *Kelley's* rationale is unclear. Recently, we read *Kelley* as controlling only where the source entity is an S corporation, observing that "The Ninth Circuit's analysis and holding in *Kelley* were based upon the above-quoted language of section 6037". *Stahl v. Commissioner,* 96 T.C. 798, 800 (1991). While that may not be the *only* reading of *Kelley,* we are confident that it is a *permissible* one.[8] Consequently, it is not clear that the Ninth Circuit would disagree with our conclusion that, where the source entity is a grantor trust, the return referenced by section 6501(a) is that of the taxpayer. Accordingly, the *Golsen* doctrine is inapplicable and we are obliged to decide this case as we think right. See *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971); *Lawrence v. Commissioner,* 27 T.C. 713 (1957), revd. 258 F.2d 562 (9th Cir. 1958).

Before closing, we note that the Ninth Circuit's holding in *Kelley* might apply only to section 6037 as it existed prior to the Subchapter S Revision Act of 1982 (the 1982 Act), Pub. L. 97-354, 96 Stat. 1669.[9] Certain provisions of the 1982 Act support the conclusion that, at least after 1982, section 6037 applies only when the S corporation is to be taxed separately. Under the 1982 Act, Congress extended the audit and litigation procedures previously made applicable to partnerships (by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648) to S corporations, obviating the need for the Commissioner to examine separately the return of each shareholder. Secs. 6221-6232, 6241-6245; *Fehlhaber v. Commissioner,* 954 F.2d 653, 657 (11th Cir. 1992), affg. 94 T.C. 863 (1990) (Court reviewed). Those procedures provide for the unified treat-

---

[8] With due respect to the Eighth Circuit, which has read *Kelley* more broadly, see *Fendell v. Commissioner,* 906 F.2d 362 (8th Cir. 1990), revg. 92 T.C. 708 (1989), we note that the Second Circuit has also read *Kelley* as relying on section 6037 and therefore applicable only when the source entity is an S corporation. See *Siben v. Commissioner,* 930 F.2d 1034 (2d Cir. 1991), affg. T.C. Memo. 1990-435.

[9] *Kelley v. Commissioner, supra* at 758 n.2 ("The substantial amendments made in 1982 are not applicable to the 1980 tax year in question here.").

ment of all subchapter S items at the corporate level, particularly pass-through items, which could not otherwise be so treated. Notably, the 1982 Act provides a period of limitations on assessment of a tax attributable to S corporation items, which period commences upon the filing of the S corporation return. Secs. 6229(a), 6244. The creation of such special procedures for adjusting pass-through S corporation items at the entity level, including a provision limiting the time period for so doing, seems inconsistent with the view that section 6037, at least after 1982, is required to accomplish that same objective. Indeed, at the time of the 1982 Act, Congress understood section 6037 to apply only when the S corporation itself, as opposed to its shareholders, was to pay tax:

> Under present law, a taxpayer's individual tax liability is determined in proceedings between the Internal Revenue Service and the individual whose tax liability is in dispute. Thus, any issues involving the income or deductions of a subchapter S corporation are determined separately in administrative or judicial proceedings involving the individual shareholder whose tax liability is affected. *Statutes of limitations apply at the individual level, based on the returns filed by the individual. The filing by the corporation of its return does not affect the statute of limitations applicable to the shareholders.* [S. Rept. 97-640 (1982), 1982-2 C.B. 718, 729; emphasis added.]

Thus, regardless of what section 6037 may have meant before the 1982 Act, there are reasonable grounds to suppose that the Ninth Circuit might read the post-1982-Act section 6037 differently than it read the pre-1982-Act section 6037 in *Kelley*.

We hold that section 6501(a) refers to the taxpayer's return, and not that of the source entity, where such source entity is a grantor trust. Accordingly, respondent's notices of deficiency were timely issued, inasmuch as the period for assessment, as to petitioners' individual tax returns, had not expired at the time such notices were issued.

*Decisions will be entered under Rule 155.*

Reviewed by the Court.

HAMBLEN, CHABOT, PARKER, COHEN, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, WELLS, RUWE, WHALEN, COLVIN, and BEGHE, *JJ.*, agree with the majority opinion.

-------

APPENDIX

The notice of deficiency for taxable years 1983 and 1985 was mailed on September 12, 1989, to petitioners John and Shirley Lardas (John and Shirley). John and Shirley's 1983 and 1985 joint Federal income tax returns were filed on August 15, 1985, and October 21, 1986, respectively. A Form 872-A(C) (Special Consent to Extend the Time to Assess Tax) for the 1983 taxable year was executed during July 1987 and terminated no sooner than 90 days from August 25, 1989, the date on which the Internal Revenue Service (the Service) received John and Shirley's Form 872-T (Notice of Termination of Special Consent to Extend Time to Assess Tax). A Form 872 (Consent to Extend the Time to Assess Tax) for the 1985 taxable year was executed during March 1989 to extend the period through October 15, 1990, which period was terminated no sooner than 90 days from July 26, the date on which the Service received John and Shirley's Form 872-T (Notice of Termination of Special Consent to Extend Time to Assess Tax). The periods for assessment had not expired with respect to John and Shirley's 1983 and 1985 tax returns as of September 12, 1989, when respondent mailed a notice of deficiency to them.

Respondent mailed notices of deficiency to petitioners Angelo and Janet Lardas (Angelo and Janet) on September 26, 1989, for the 1983 taxable year and on September 25, 1989, for the 1985 taxable year. Angelo and Janet's joint Federal income tax returns for 1983 and 1985 were filed August 17, 1984, and October 14, 1986, respectively. A Form 872-A(C) (Special Consent to Extend the Time to Assess Tax) for the 1983 taxable year was executed during July 1987, and terminated no sooner than 90 days from July 28, 1989, the date on which the Service received Angelo and Janet's Form 872-T (Notice of Termination of Special Consent to Extend the Time to Assess Tax). A Form 872-A (Special Consent to Extend the Time to Assess Tax) for the 1985 taxable year was executed during April and May 1989, and terminated no

sooner than 90 days from July 28, 1989, the date on which the Service received Angelo and Janet's Form 872-T (Notice of Termination of Special Consent to Extend the Time to Assess Tax). The periods for assessment had not expired with respect to Angelo and Janet's 1983 and 1985 tax returns as of September 26 and 25, 1989, when respondent mailed the notices of deficiency to them.

John and Angelo were grantors and beneficiaries of the Square D Trust (Square D) and the SCB Trust (SCB). Square D and SCB were formed pursuant to declarations of trust dated December 31, 1982, and December 1, 1983, respectively. Both trusts were involved in equipment leasing. Jerry Minsky (Minsky) served as trustee of both trusts and was responsible for the management and record keeping of each trust. On petitioners' respective 1983 and 1985 Federal income tax returns, each had claimed losses in connection with the equipment-leasing activity of Square D and SCB. Respondent, in the various notices of deficiency, disallowed the claimed losses.

A Form 1041 (U.S. Fiduciary Income Tax Return) was filed for SCB's 1985 calendar year on which it was specified that SCB was a grantor trust. On each of the lines of the U.S. fiduciary return Form 1041 which required key reporting data (e.g., total income and balance of tax due) the form had been marked "N/A", ostensibly for "not applicable". No figures were set forth on the two-page Form 1041. On a prominent portion of the front page of the form, however, the words "Grantor Trust See Attached Schedule" had been typed. The jurat had been signed and dated April 10, 1986, by Minsky. Attached to the Form 1041 were 10 single-page documents each entitled "Grantor Tax Information Letter". Each such document contained the name of the trust, trustee, and name and address of a particular beneficiary. Below this descriptive information was the statement: "Enter The Amounts Listed Below On Your U.S. Income Tax Return", which was followed by amounts of income, deductions, and a loss, along with certain other information concerning tax preference items, net investment income, and excess expense of net lease property. Respondent received the Form 1041 for SCB's 1985 calendar year on April 14, 1986. The Form 1041 filed for SCB's 1983 calendar year was received by respondent on

April 15, 1984. No consents were executed to extend the period for assessment in connection with SCB.

Square D's Forms 1041 for its calendar years 1983 and 1985 were similar in most respects to the Forms 1041 filed on behalf of SCB. Square D's 1983 and 1985 Forms 1041 were received by respondent on March 21, 1984, and April 14, 1986, respectively. Minsky, as trustee of Square D, entered into a consent to extend the period for assessment for 1983 to December 31, 1987. Square D was designated as a grantor trust on each of its Forms 1041.

Respondent, by a letter dated April 11, 1989, notified SCB of examination adjustments to its 1983 and 1985 years. In explanations attached to the April 11 letter, it was indicated that all losses were being denied. The April 11 letter also contains the statement: "The effect of these proposed adjustments on the income tax liability of each partner, shareholder, beneficiary, or grantor will be shown in separate examination reports that will be sent to them." An identical form letter dated July 31, 1987, had been sent to Square D for its 1983 year, along with a more detailed explanation for the disallowance for the claimed losses. The form letter was sent to Square D on March 23, 1989, for the 1985 taxable year.

At the time the notices were sent to petitioners, more than 3 years had expired since the filing of the 1983 and 1985 Forms 1041 for SCB and Square D.

---

GERBER, *J.,* dissenting: I respectfully disagree with the majority's interpretation of the ratio decidendi of *Kelley v. Commissioner,* 877 F.2d 756 (9th Cir. 1989) (*Kelley*). I am in harmony with the majority's discussion of section 6501(a), the explanation of this Court's position on the subject issue, and the scholarly exposition on the *Golsen* doctrine. However, I respectfully submit that the holding in *Kelley* should result in our holding for petitioners under the *Golsen* doctrine.

My disagreement with the majority opinion is sourced in the absence of rationale in the *Kelley* opinion. The *Kelley* opinion does not contain an explanation as to why the subchapter S corporation return was found to be "the return" referenced in section 6501(a). The only reasoning expressed

in *Kelley* which may have been the rationale for deciding that the subchapter S return was the one referenced in section 6501 is a policy consideration. That policy consideration concerns the closing of taxable years to facilitate the disposition of old records. The *Kelley* court also discusses the inability of a shareholder to defend against the Commissioner's determination because the corporation retains or controls the records. These policy considerations are no less applicable to trusts, partnerships, and subchapter C corporations than to subchapter S corporations. In addition to anomalous results, the majority's holding is the least likely interpretation of the holding of the Circuit Court. If the Ninth Circuit were confronted with a case involving an entity other than a subchapter S corporation, it would be compelled to either reverse its *Kelley* holding or hold that the principle applies to all entities which are the source of the tax items. Because our Court is not in a position to "reverse" a Circuit Court's holding, we should apply the rule of the circuit under our *Golsen* doctrine.

The following considerations are advanced in support of this conclusion:

(1) Concerning this Court's position,[1] two Circuit Courts have reversed and two Circuit Courts have affirmed. Although different types of entities were involved in some of the cases, the overall concept has been addressed in a consistent and similar manner. Those Circuit Courts which have affirmed have essentially adopted our position. *Fehlhaber v. Commissioner,* 954 F.2d 653 (11th Cir. 1992), affg. 94 T.C. 863 (1990) (Court reviewed) (concerning subchapter S corporations); *Bufferd v. Commissioner,* 952 F.2d 675 (2d Cir. 1992), affg. T.C. Memo. 1991-170, cert. granted 505 U.S. ___, 112 S. Ct. 2990 (1992) (concerning a subchapter S corporation); *Siben v. Commissioner,* 930 F.2d 1034 (2d Cir. 1991), affg. T.C. Memo. 1990-435 (concerning a partnership). Those Circuit Courts which have reversed have held that the entity from which the tax item is derived controls the period for assessment. *Kelley v. Commissioner,* 877 F.2d 756 (9th Cir. 1989), revg. and remanding T.C. Memo. 1986-405 (concerning a subchapter S corporation); *Fendell v.*

---

[1] Our position is that the relevant return for determining whether the period for assessment had expired under sec. 6501(a) is that of a taxpayer against whom respondent has determined a deficiency.

*Commissioner,* 906 F.2d 362 (8th Cir. 1990), revg. and remanding 92 T.C. 708 (1989) (concerning a complex trust).

It is most curious that the majority opinion contains no discussion of the holding and rationale in *Fendell v. Commissioner, supra.* In that case the Court of Appeals for the Eighth Circuit relies upon *Kelley*[2] in support of its holding that a complex trust's return controlled the period for assessment and not the return of the beneficiary for which the Commissioner had determined a deficiency. The *Fendell* court stated that *Kelley* embodied "the principle that in order for the Commissioner to adjust tax liability, he must be able to do so at the source of income, here the Trust, or will be prevented from doing so at the point where the income is distributed, in this case the beneficiary of the Trust." *Fendell v. Commissioner, supra* at 364. The Eighth Circuit's opinion goes on to point out that the "principle finds sound support in the concept of finality, as expressed by the Ninth Circuit in *Kelley:* 'The statute of limitations exists, in part, so that after some time persons can be confident that their affairs are closed and they can dispose of old records.'" *Id.* (quoting *Kelley v. Commissioner, supra* at 758). Obviously, that policy consideration would not be limited to subchapter S corporations.

(2) There are a number of parallels between subchapter S corporations (involved in *Kelley*) and grantor trusts (involved in these cases). Those parallels are a basis for applying the *Kelley* holding to a case involving a grantor trust. Most of the attributes of a trust, especially a grantor trust, are the same as a subchapter S corporation. Both entities: Are considered pass-through entities; are generally required to file a return; are generally not obligated for tax; and may be taxable under certain circumstances. These parallels also make it likely that the Ninth Circuit would reverse the holding of the majority opinion. It should also be noted that *Fendell* also involved a trust, albeit a complex trust.

The majority has chosen to adopt a narrow and unlikely interpretation of *Kelley.* Of the several possible interpretations advanced in the majority opinion, the most logical

---

[2] In *Fendell v. Commissioner,* 906 F.2d 362 (8th Cir. 1990), the court also referenced two other cases which it stated supported the same principle: *Boatmen's First Nat. Bank of Kansas City v. United States,* 705 F. Supp. 1407 (W.D. Mo. 1988), and *Illinois Masonic Home v. Commissioner,* 93 T.C. 145 (1989).

interpretation is the more universal concept that the return referenced in section 6501 is that of the source entity of the tax items. Limiting this concept to subchapter S corporations is not mandated by sections 6037 or 6501(a) and causes anomalous and erratic results which the majority has not addressed.[3]

To distinguish *Kelley* from the circumstances here (which concern a trust), the majority places great reliance on the section 6037 distinctions involving subchapter S corporations. That reliance is misplaced because section 6037 does not resolve the question of which "return" is the one referenced in section 6501. Although the *Kelley* opinion is almost exclusively devoted to a discussion of section 6037, that discussion addresses why a pass-through entity can be subject to the assessment period limitations of section 6501. Section 6037 is used by the Ninth Circuit solely to address the Government's pass-through entity argument, which we otherwise find irrelevant based upon our understanding of section 6501.[4] Section 6037 states that "Any return filed pursuant to this section shall, for purposes of chapter 66 (relating to limitations), be treated as a return filed by the corporation under section 6012." Section 6037 provides no guidance on the underlying question of which return is being referenced in section 6501(a).

The majority cautions that the Golsen doctrine should be followed only where the Circuit Court's holding is squarely

---

[3] For example, subchapter S shareholders in the Ninth Circuit's jurisdiction would be subject to the period of limitations of the subchapter S corporation. As decided in *Kelley v. Commissioner*, 877 F.2d 756 (9th Cir. 1989), the shareholder may benefit if the corporate tax year is closed at the time of the shareholder's audit. If, however, no return is filed for the corporation, then the period for assessment of corporate items could remain open indefinitely for the corporation and shareholder. This Court has held that interpretation to be incorrect. However, under the majority's interpretation of *Kelley* this result would only occur in the Ninth Circuit and only for shareholders of subchapter S corporations. Any benefits would not be available for other types of shareholders, beneficiaries, or individuals whose tax items are derived from some other form of entity.

[4] The majority opinion correctly states this Court's position that "the relevant return for determining whether * * * the period for assessment had expired under section 6501(a) 'is that of petitioner against whom respondent has determined a deficiency'." Majority op. p. 493 (quoting *Fehlhaber v. Commissioner*, 94 T.C. 863, 868 (1990) (Court reviewed), affd. 954 F.2d 653 (11th Cir. 1992)). The incidence of tax and pass-through aspects of an entity become relevant only when considering the source-of-income approach adopted by the Courts of Appeals for the Eighth and Ninth Circuits.

To the extent that courts (including this Court) have relied upon sec. 6037 or considered whether an entity is a pass-through in deciding this issue, it has been addressed from the wrong perspective. Under the interpretation of this Court and two affirming Circuit Courts, it is unnecessary to consider whether the source entity does or does not file a return or whether that return commences the running of a period for assessment of tax against that entity.

on point. The majority then concludes that *Kelley* is distinguishable because it involves a subchapter S corporation and is therefore not squarely on point. Like the majority, I do not agree with the opinions of the Eighth and Ninth Circuits. However, like the Eighth Circuit I am unable to read the Ninth Circuit's opinion as applicable only to subchapter S corporations. The *Kelley* case, to my way of thinking, is "squarely on point" and has been interpreted too narrowly by the majority. Quoting from the majority's opinion, "it would be futile and wasteful", majority op. p. 495, to require petitioners in these cases to proceed to the Court of Appeals for the Ninth Circuit to obtain the result I believe is inevitable.