T.C. Memo. 2000-183


UNITED STATES TAX COURT


HAAS & ASSOCIATES ACCOUNTANCY CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MICHAEL A. HAAS AND ANGELA M. HAAS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 16486-98, 16487-98.          Filed June 21, 2000.


<u>William Edward Taggart, Jr.</u>, for petitioners.

<u>Kathryn K. Vetter</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties as follows:

|  | 1993 | 1994 | 1995 |
|---|---|---|---|
| **Michael and Angela Haas** | | | |
| Deficiency | $34,416 | -- | -- |
| Sec. 6662(a) Accuracy-<br>Related Penalty | 6,883 | -- | -- |
| **Haas & Associates<br>Accountancy Corp.** | | | |
| Deficiency | -- | $10,833 | $7,457 |
| Sec. 6662(a) Accuracy-<br>Related Penalty | -- | 2,167 | 1,491 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision involve claimed ordinary deductions relating to a covenant not to compete and to consulting services, a claimed exclusion from income of $151,000 relating to receipt of shares of stock in an accounting firm, and the accuracy-related penalties. All references to Haas are to petitioner Michael Haas.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

When the petitions were filed, petitioners Michael and Angela Haas resided in Novato, California, and the principal

place of business of petitioner Haas & Associates Accountancy Corp. (Haas & Associates) was located in Novato, California. Haas & Associates was incorporated in the State of California.

In 1977, Haas graduated from the University of San Francisco with a degree in accounting and was employed for 2 years as an accountant for Ernst & Ernst.

In August of 1979, Haas began employment as an accountant for Dean, Hale & Petrie (DHP), a public accounting firm incorporated in California. The stock of DHP was owned predominantly, if not exclusively, by Kurt Petrie (Petrie). In 1980, Haas became a certified public accountant.

On March 7, 1983, the name of DHP was changed to Dean, Petrie, and Haas (DPH), and on June 1, 1984, 10 percent of the outstanding shares of stock in DPH was transferred to Haas. Petrie owned the other 90 percent of the DPH stock, and Petrie served as president and general manager of DPH.

In 1992, after working together for 13 years, differences of opinion developed between Haas and Petrie over how DPH should be managed. As a result, Haas informed Petrie that he wanted to leave DPH. Haas attempted to negotiate an agreement with Petrie under which he would pay DPH for the right to take over the accounting services relating to some of DPH's clients with whom Haas had developed a strong relationship. Haas and Petrie failed to reach an agreement, and in November of 1992 Haas and Petrie

hired attorneys to continue the negotiations.  The negotiations turned acrimonious and resulted in a series of offers and counteroffers.

On January 15, 1993, Haas and Petrie signed a contract under which Haas agreed to make certain payments to DPH in return for which accounting services relating to approximately 180 clients of DPH were to be turned over to a new corporation to be owned by Haas.  In prior years, the accounting services performed by DPH for the 180 clients produced for DPH approximately $600,000 in annual gross receipts.

To effect this agreement, on January 25, 1993, Haas & Associates, a new subsidiary of DPH, was formed, and on February 25, 1993, the name of DPH was changed to Dean & Petrie (DP).[1]  In a March 5, 1993, separation agreement between Haas, Petrie, and DP, the division between Haas and Petrie of the DP accounting firm was formalized.  As a first step in the transaction, Haas received an additional 8.26 percent of the outstanding shares of DP stock, bringing Haas' total stock interest in DP to 18.26 percent.

Haas' 18.26-percent stock interest in DP was then redeemed by DP, and all of the shares of stock in Haas & Associates was transferred to Haas.  The files relating to the 180 former clients of DPH were transferred to Haas.  DP and Petrie

---

[1]  Hereinafter, we generally use DP to refer to DPH and to DP.

individually agreed, for a period of 36 months, not to compete with Haas and Haas & Associates (i.e., not to solicit any of the 180 clients transferred to Haas and to Haas & Associates), and DP and Petrie nominally agreed to provide limited "transitional" consulting services to Haas and to Haas & Associates relating to the 180 clients.

In the separation agreement, the fair market values of DPH as a corporation (as of December 1, 1992), of Haas' stock interests in DP, of the 180 clients transferred to Haas, of the 180 client files, of the covenant not to compete, and of the right to receive consulting services were indicated as follows:

| Item | Value |
|------|-------|
| DPH as a Corporate Entity | $1,830,079 |
| 8.26% Stock Interest in DP Transferred to Haas | 151,165 |
| 18.26% Stock Interest in DP Transferred by Haas to DP | 334,087 |
| 180 Clients Transferred to Haas and Haas & Associates | 334,087 |
| 180 Client Files | 10,000 |
| Covenant not to Compete | 190,000 |
| Right to Receive Consulting Services | 63,500 |

Under the terms of the separation agreement, the receipt by Haas of the additional 8.26-percent stock interest in DP was to

be treated by Haas as representing $151,165 in taxable compensation and as an ordinary business expense for DP. Haas' exchange of his DP stock for the stock in Haas & Associates was to be treated as a tax-free reorganization under sections 355 and 368(a)(1)(D).

Under the terms of the separation agreement, the 180 client files, the covenant not to compete, and the right to receive consulting services were transferred to Haas individually in exchange for the payment by Haas to DP of $263,500, the indicated total value therefor.[2]

Until January 1, 1994, Haas carried on two separate accounting practices--one individually and one through Haas & Associates.

On January 1, 1994, Haas transferred all of the assets of his individual accounting practice to Haas & Associates.

Haas and his wife Angela timely filed their 1993 joint Federal income tax return. On their return, Haas included as ordinary income the $151,000 reflecting the indicated value for the shares of stock in DP that Haas had received.[3]

---

[2]    $10,000 relating to the client files **+** $190,000 relating to the covenant not to compete **+** $63,500 relating to the consulting services **=** $263,500.

[3]    DP issued to Haas a Form W-2, Wage and Tax Statement, in the amount of $151,000 relating to the additional 8.26-percent stock interest in DP that Haas received even though the value indicated therefor in the separation agreement was $151,165.

For 1993, 1994, and 1995, Haas & Associates timely filed corporation income tax returns.  On Haas and his wife's 1993 joint Federal income tax return and on Haas & Associates' 1994 and 1995 corporation income tax returns, the $190,000 relating to the covenant not to compete was amortized as an ordinary and necessary business expense deduction, and the $63,500 relating to consulting services was deducted in 1993 as an ordinary business expense as follows:

|  | Year | Amortization Deduction for Covenant not to Compete | Deduction Relating to Consulting Services |
|---|---|---|---|
| Haas' Joint Income Tax Return | 1993 | $58,056 | $63,500 |
| Haas & Associates' Corporation Income Tax Return | 1994 | 63,333 | -- |
|  | 1995 | 63,333 | -- |

On audit, respondent disallowed the above deductions relating to the covenant not to compete and to the consulting services.  In the alternative only, if these deductions are not allowed, petitioners claim that the $151,000 relating to the

8.26-percent stock interest in DP that Haas received should be excluded from Haas' income.[4]

OPINION

$190,000 Relating to Covenant Not To Compete

Under section 162(a), a taxpayer may deduct all ordinary and necessary expenses incurred in carrying on a trade or business.

Generally, amounts paid for covenants not to compete are amortized over the life of the covenants as current business expenses. See Warsaw Photographic Associates, Inc. v. Commissioner, 84 T.C. 21, 48 (1985). Amounts paid, however, for goodwill or for going concern value of a business generally are treated as nondeductible capital expenditures. See Fong v. Commissioner, T.C. Memo. 1984-402, affd. without published opinion 816 F.2d 684 (9th Cir. 1987).

To be respected for Federal income tax purposes, covenants not to compete should reflect economic reality. See Patterson v. Commissioner, 810 F.2d 562, 571 (6th Cir. 1987), affg. T.C. Memo. 1985-53; Lemery v. Commissioner, 451 F.2d 173, 174 (9th Cir. 1971), affg. per curiam 52 T.C. 367 (1969).

The division between Haas and Petrie was acrimonious and strained, and we are satisfied that Petrie could have made a

---

[4]    Amortization deductions were also claimed for the $10,000 relating to the client records, which respondent did not disallow.

strong effort to compete for the 180 clients that were transferred to Haas. Petrie was an experienced and successful accountant who, after the division, was the president and sole shareholder of DP. We believe that the covenant not to compete to which Petrie and DP agreed and for which Haas paid $190,000 reflects economic substance and that the $190,000 represented a reasonable amount for the covenant not to compete. Based on prior years, the clients protected by the covenant represented approximately $600,000 in annual gross receipts. The $190,000 for the 3-year covenant not to compete is properly amortizable as an ordinary and necessary business expense.

## $63,500 Relating to Consulting Services

Petitioners contend that the $63,500 paid by Haas for the right to receive consulting services from Petrie and DP was necessary to aid in the division of the accounting practice.

Respondent contends that little, if any, consulting services were provided by Petrie and DP, that petitioners have not satisfied their burden of establishing Haas' need for the consulting services, and that any consulting services that were provided by Petrie and DP (or its predecessor DPH) occurred before the division and should be treated as nondeductible startup expenditures of Haas & Associates. See sec. 195. We agree with respondent.

The evidence does not establish that the $63,500 payment relating to the so-called consulting services represented an ordinary and necessary business expense for Haas or for Haas & Associates.  See Rule 142(a).  Haas was an experienced accountant and had good relationships with the clients.  The credible evidence does not establish the need for any such services.

Further, any payment relating to consulting services that Petrie and DPH provided before the division of the DPH accounting firm is to be treated as a nondeductible startup expenditure of Haas' individual accounting practice or of Haas & Associates' accounting practice.  See sec. 195.

$151,000 Relating to 8.26-Percent Stock
Interest and Section 6662(a) Penalty

Alternatively, petitioners claim that the $151,000 relating to Haas' receipt of the additional 8.26-percent stock interest in DP should be excluded from their income.

Under the "strong proof" rule generally followed by this Court, taxpayers challenging the tax treatment or allocations reflected in purchase and sale contracts may succeed only by producing strong proof that the revised allocations better reflect the actual intent of the parties and the economic realities.  See Schulz v. Commissioner, 294 F.2d 52, 54 (9th Cir. 1961), affg. 34 T.C. 235 (1960); Meredith Corp. & Sub. v.

Commissioner, 102 T.C. 406, 438 (1994); Major v. Commissioner, 76 T.C. 239, 247 (1981).

We shall, however, apply the Danielson rule[5] if the Court of Appeals to which the case is appealable would do so.  See Lardas v. Commissioner, 99 T.C. 490, 498 (1992); Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971); Lang v. Commissioner, T.C. Memo. 1993-474.  Because the Court of Appeals for the Ninth Circuit, the Court of Appeals to which this case is appealable, has not explicitly adopted the Danielson rule, see Schmitz v. Commissioner, 51 T.C. 306, 315-316 (1968), affd. sub nom. Throndson v. Commissioner, 457 F.2d 1022, 1025 (9th Cir. 1972), we shall apply the "strong proof" rule.

The basis for petitioners' alternative contention is that the $151,000 reported as income on their 1993 joint Federal income tax return represented artificial income and should not be charged to Haas as income.

Respondent contends that petitioners have not presented strong proof to overcome the treatment in the separation agreement by Haas, Petrie, and DP of the $151,000 as ordinary income to Haas.

---

[5]    Under the Danielson rule, a party may seek to alter the terms of an agreement only by adducing proof which in an action between the parties to the agreement would be admissible to alter the agreement or to show its unenforceability because of mistake, undue influence, fraud, duress, etc.  See Commissioner v. Danielson, 378 F.2d 771, 775 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965).

No credible evidence refutes the income character of the $151,000. Haas received the additional 8.26-percent stock interest in DP that was valued at $151,000 and treated as nonemployee compensation. Haas agreed to report and did report the $151,000 on his and his wife's 1993 joint Federal income tax return as taxable income. Petitioners have not provided adequate evidence to support the recharacterization of the $151,000 as nontaxable income.

Under section 6662(a), a penalty is imposed equal to 20 percent of the portion of the underpayment that is attributable to a substantial understatement of income tax (namely, an understatement for a year in excess of 10 percent of the amount required to be shown on the Federal income tax return or $5,000). See sec. 6662(d)(1). However, if the taxpayer has substantial authority for the tax return position, the penalty does not apply. See sec. 6662(d)(2)(B)(i). We have disallowed the $63,500 claimed deduction relating to consulting services primarily on grounds of petitioners' burden of proof. We believe that petitioners, on the limited facts in evidence relating to this issue, had a reasonable basis for claiming a current ordinary deduction for the $63,500 relating to the consulting services. We do not sustain the section 6662(a) penalty.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.