# United States Tax Court

161 T.C. No. 7

WOLFGANG FREDERICK KRASKE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 27574-15.                          Filed October 26, 2023.

————————

P's 2011 and 2012 returns were examined by a tax compliance officer (TCO) with the IRS Small Business and Self-Employed Division who on June 2, 2014, issued P a Letter 692 (15-day letter) proposing deficiencies as well as penalties pursuant to I.R.C. § 6662(a) and (b)(2) for both years. The 15-day letter advised P that if he disagreed with the proposed adjustments, he could, within 15 days of the letter's date, request a conference with the IRS Office of Appeals (Appeals) by providing the TCO with a list of disagreed items, upon receipt of which his case would be forwarded to Appeals.

On July 16, 2014, P mailed a letter to the TCO requesting Appeals consideration, which was received by the TCO on July 24, 2014.

On July 21, 2014, the TCO's immediate supervisor gave written approval for the imposition of the I.R.C. § 6662(a) and (b)(2) penalties for both years. P's case was thereafter forwarded to Appeals, which received it on August 12, 2014.

P was unable to reach a settlement with Appeals, and on July 28, 2015, R issued P a notice of deficiency

determining, inter alia, that he was liable for penalties pursuant to I.R.C. § 6662(a) for both years.

*Held*: The holding of the Court of Appeals for the Ninth Circuit, where an appeal in this case would ordinarily lie, in *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020), concerning the timeliness of the written supervisory approval of a penalty required by I.R.C. § 6751(b), is squarely on point, and, pursuant to *Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), we will follow it.

*Held, further*, the written supervisory approval for the penalties at issue, which were subject to deficiency procedures, was timely, as the TCO's immediate supervisor gave approval before the case was transferred to Appeals, while she retained discretion to approve or to withhold approval of the penalties.

––––––––––

Wolfgang Frederick Kraske, pro se.

*Alexander D. DeVitis* and *Christine A. Fukushima*, for respondent.

GALE, *Judge*: In a separate opinion in this case, *Kraske v. Commissioner*, T.C. Memo. 2023-128, we sustained deficiencies of $11,464 and $11,403 in petitioner's federal income tax for taxable years 2011 and 2012, respectively. As petitioner reported income tax of $10,719 and $12,716 for those years, respectively, respondent determined that petitioner is liable for a penalty for each year pursuant to section 6662(a) and (b)(2)[1] for an underpayment attributable to a substantial understatement of income tax. In this opinion we decide whether petitioner is so liable.

–––––––––––––––––––––

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times. We round all monetary amounts to the nearest dollar.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The First Stipulation of Facts, First Supplemental Stipulation of Facts, and the attached Exhibits are incorporated herein by this reference. Petitioner resided in California when he timely filed his Petition.

An examination of petitioner's returns for the 2011 and 2012 taxable years was conducted by a tax compliance officer (TCO) with the Internal Revenue Service (IRS) Small Business and Self-Employed Division. On June 2, 2014, the TCO issued petitioner Letter 692 (15-day letter) proposing adjustments resulting in (1) a deficiency in tax of $11,464 and a penalty pursuant to section 6662(a) and (b)(2) of $2,293 for 2011; and (2) a deficiency of $11,403 and a penalty pursuant to section 6662(a) and (b)(2) of $2,281 for 2012. The 15-day letter advised petitioner that if he disagreed with the proposed adjustments, he could request a conference with the IRS Office of Appeals (Appeals) by providing the TCO with a list of the disagreed items, upon receipt of which his case would be forwarded to Appeals.[2] The 15-day letter further advised that if petitioner did not respond within 15 days, a notice of deficiency would be issued.

Almost a month after the deadline for responding, on July 16, 2014, petitioner mailed a letter to the TCO stating his disagreement with the principal proposed adjustment, which was received by the TCO on July 24, 2014.[3] Also on July 16, as recorded in the TCO's activity record for petitioner's case, the TCO—not having received a response to the 15-day letter from petitioner after having been promised it several times—closed the case as unagreed and forwarded it to the group manager, her immediate supervisor.

On July 21, 2014, the group manager reviewed the case, signed civil penalty approval forms approving the assertion of the section

---

[2] On July 1, 2019, the Office of Appeals was renamed the Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). We will use the name in effect at the times relevant to this case, i.e., the Office of Appeals or Appeals.

[3] The parties stipulated that petitioner's letter was "submitted" on July 16, 2014. The letter, a copy of which was also stipulated, is dated July 16, 2014, and bears a "Received" stamp of the Small Business and Self-Employed Division dated July 24, 2014. On the basis of the foregoing evidence we find that the letter was mailed on July 16, 2014, and received by the TCO on July 24, 2014.

6662(a) substantial understatement penalty for 2011 and 2012, and approved the case for closure.

After receipt of petitioner's response on July 24, 2014, his case was forwarded to Appeals. Appeals' case activity record states that the case was received on August 12, 2014, and assigned to an Appeals officer on August 28, 2014. Petitioner was unable to reach a settlement with Appeals, and on July 28, 2015, a notice of deficiency was issued to petitioner reflecting the same adjustments as in the 15-day letter.

OPINION

I.    *Timeliness of Penalty Approval*

The Commissioner bears the burden of production with respect to an individual taxpayer's liability for any penalty, requiring the Commissioner to come forward with sufficient evidence indicating that the imposition of the penalty is appropriate. *See* § 7491(c); *Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001). As part of that burden, the Commissioner must produce evidence of compliance with procedural requirements of section 6751(b)(1). *See Graev v. Commissioner*, 149 T.C. 485, 492–93 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016).

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In the statute "assessed" refers to a ministerial function, "the formal recording of a taxpayer's tax liability on the tax rolls," which is "the last of a number of steps required before the IRS can collect" a tax or penalty from a taxpayer. *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1071 (9th Cir. 2022) (quoting *Chai v. Commissioner*, 851 F.3d 190, 218 (2d Cir. 2017), *aff'g in part, rev'g in part* T.C. Memo. 2015-42), *rev'g and remanding* 154 T.C. 68 (2020).

The written supervisory approval described in section 6751(b) is not required to take any specific form. *See Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 85–86 (2019). But we have held that it generally must be obtained no later than (1) the date on which the Commissioner issues the deficiency notice, or (2) the date, if earlier, on which the Commissioner formally communicates to the taxpayer the Examination Division's determination to assert a penalty. *See Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020); *Clay v.*

*Commissioner*, 152 T.C. 223, 249–50 (2019), *aff'd*, 990 F.3d 1296 (11th Cir. 2021).

In *Clay*, 152 T.C. at 249–50, the Commissioner issued the taxpayer a 30-day letter before the date on which the supervisory approval was obtained via a civil penalty approval form. We held that section 6751(b) was not satisfied because approval was not obtained before "a communication that advise[d] the taxpayer that penalties [would] be proposed and g[ave] the taxpayer the right to appeal them with Appeals." *Clay*, 152 T.C. at 249. Here, respondent concedes that written approval of the initial penalty determinations was not obtained until after a formal communication from the Commissioner—i.e., the 15-day letter—was sent to petitioner, which notified him of the proposed penalties and offered him the right to have them considered by Appeals. Therefore, the approval of the immediate supervisor was not timely under *Clay*.

However, an appeal in this case would ordinarily lie with the Court of Appeals for the Ninth Circuit, and therefore its precedent governs this case. *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). In *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th at 1071, the Ninth Circuit considered the timeliness of supervisory approval for "assessable penalties," which are not subject to deficiency procedures. The Ninth Circuit's holding concerning the timeliness of supervisory approval is articulated in broad terms: "[W]e hold that § 6751(b) requires written supervisory approval before the assessment of the penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment." *Id.* at 1074. Accordingly, the question arises whether the holding should be read so as to encompass penalties subject to deficiency procedures as well.

In *Golsen*, 54 T.C. at 757, we noted that "better judicial administration . . . requires us to follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone." This prescription arose from the recognition that if we insisted on our view (as a court of national jurisdiction) and held contrary to a squarely-on-point decision of a court of appeals with jurisdiction over the appeal, the "virtual[ly] certain[]" result would be the nonprevailing party's appealing our decision and securing a reversal—a scenario that would be a futile waste of taxpayer and judicial resources. *Lardas v. Commissioner*, 99 T.C. 490, 494 (1992). Thus, in *Lardas* we framed the test for applying the *Golsen* doctrine as

whether the court of appeals decision at issue "is so clearly on point that it would be futile" to issue a decision contrary to it. *Id.* at 498. We cautioned, however, that given our obligation as a court of national jurisdiction "to apply with uniformity its interpretation" of the taxing statutes, *Lawrence v. Commissioner*, 27 T.C. 713, 719 (1957), *rev'd*, 258 F.2d 562 (9th Cir. 1958), "we should be careful to apply the *Golsen* doctrine only under circumstances where the holding of the Court of Appeals is squarely on point," *Lardas*, 99 T.C. at 495.

In *Lardas*, to determine whether the relevant court of appeals decision was "so clearly on point" that a decision contrary to it would be futile, we found it necessary to ascertain "*the scope of* [*the decision's*] *rationale.*" *Id.* at 498 (emphasis added). In *Lardas* the issue was whether in the case of income source entities (such as S corporations, partnerships, or trusts) the filing of the return of the source entity or, instead, the return of the taxpayer receiving income from the source entity, commenced the running of the limitations period on assessment of tax. The Tax Court had uniformly held that the return of the taxpayer receiving income from a source entity was the relevant return. But the Ninth Circuit, where appeal would lie, had held to the contrary where the source entity was an S corporation. *See Kelley v. Commissioner*, 877 F.2d 756 (9th Cir. 1989), *rev'g and remanding* T.C. Memo. 1986-405. The source entity at issue in *Lardas* was a grantor trust.

What is important to recognize is that in *Lardas*, when deciding whether the *Golsen* doctrine should cause us to follow the Ninth Circuit, we did not merely point to the fact that the case before us involved a grantor trust whereas the Ninth Circuit decision involved an S corporation. We instead undertook an analysis to determine the scope of the Ninth Circuit's rationale in its holding concerning an S corporation so as to ascertain whether it clearly extended to grantor trusts as well. Finding that the scope of the Ninth Circuit's rationale was unclear concerning grantor trusts, we concluded that the *Golsen* doctrine was inapplicable. *Lardas*, 99 T.C. at 498.

By contrast, as explained below, the rationale of the Ninth Circuit's holding in *Laidlaw's Harley Davidson* is clear regarding the timing of supervisory approval. The Ninth Circuit rejected outright our position in *Clay* that the supervisory approval required by section 6751(b)(1) is timely only if it is obtained before a formal communication to the taxpayer that penalties would be proposed, finding that our interpretation "has no basis in the text of the statute." *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th

at 1072. Instead, the Ninth Circuit opined that approval is timely at any time before assessment, provided the supervisor retains discretion to give or withhold approval. As an example of this qualifier, the court reasoned that, in the case of penalties subject to deficiency procedures, a deadline earlier than just before assessment might be required because a supervisor begins to lose discretion to approve once a notice of deficiency is sent.[4]

As previously noted, the Ninth Circuit summarized its holding in *Laidlaw's Harley Davidson* in broad terms: "[W]e hold that § 6751(b) requires written supervisory approval before the assessment of the penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment." *Id.* at 1074. By its terms, the holding is not confined to assessable penalties, and the Ninth Circuit's discussion makes clear that it had in mind penalties subject to deficiency procedures when it added the qualifier that a supervisor must have had discretion to approve when acting to do so. Thus, nothing in the Ninth Circuit's holding or analysis suggests that it might think a timing rule different from its "retention of discretion" rule would apply in the case of penalties subject to deficiency procedures.

Given the Ninth Circuit's rejection of our section 6751(b) interpretation in *Clay* that measures timeliness on the basis of formal communications to the taxpayer, and its broadly phrased holding that approval is timely at any time before assessment so long as the supervisor retains discretion to approve, we conclude that its rationale is clear and extends to penalties subject to deficiency procedures. If we were to follow *Clay* and find the supervisory approval here untimely because it did not occur before the proposed penalties were formally communicated to the taxpayer, "a reversal would appear inevitable." *See Lardas*, 99 T.C. at 495. We accordingly hold that *Laidlaw's Harley*

---

[4] As the Ninth Circuit explained, the supervisor loses discretion after a notice of deficiency is sent because thereafter assessment of a penalty is governed by specific statutory mandates: by section 6213(c) if the taxpayer fails to file a petition with the Tax Court within 90 days, in which case the penalty "shall" be assessed; or, if a petition is filed, by section 6213(a), prohibiting assessment "until the decision of the Tax Court has become final," and by section 6215(a), providing that when the decision of the Tax Court has become final, the deficiency (which includes associated penalties) as redetermined by the Tax Court "shall be assessed." *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th at 1071 n.4.

*Davidson* is squarely on point, and pursuant to the *Golsen* doctrine we will follow it in this case.[5]

In applying the *Laidlaw's Harley Davidson* holding here, the question becomes whether the TCO's immediate supervisor retained discretion to approve the penalties when she did so. When the supervisor approved the penalties on July 21, 2014, it was more than a month past the deadline for petitioner to respond to the 15-day letter, and the TCO had not received a written request for Appeals' consideration from him. Although petitioner had mailed such a request on July 16, 2014, it was not received by the TCO until July 24, 2014—three days after written supervisory approval had been given. The case was not received by Appeals until August 12, 2014—over three weeks after supervisory approval had been given. Thus, the TCO's immediate supervisor retained discretion to approve or to withhold approval of the penalties when she did so on July 21 because the case had not yet been transferred to Appeals (at which time the Small Business and Self-Employed Division's jurisdiction over the case, and the supervisor's discretion, may have terminated).

This timeline is well within the parameters for the supervisory approval found timely by the Ninth Circuit in *Laidlaw's Harley Davidson*. In that case, the revenue agent's immediate supervisor did not give written approval of the penalty until more than a month after the taxpayer's request for Appeals consideration had been received. The case was then transferred to Appeals the day after supervisory approval was given. *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th at 1069. Accordingly, following *Laidlaw's Harley Davidson*, we hold that the approval was timely, and respondent has met his burden of production to show that the requirements of section 6751(b)(1) have been satisfied.

---

[5] We acknowledge that we have previously suggested otherwise in a memorandum opinion. *See Castro v. Commissioner*, T.C. Memo. 2022-120, at *5 n.6. *But see Kamal v. Commissioner*, T.C. Memo. 2023-80 (applying *Laidlaw's Harley Davidson* holding with respect to a penalty subject to deficiency procedures). In both of these cases, however, the approval was timely under either the *Clay* holding or the *Laidlaw's Harley Davidson* standard. In any event, the better reading of *Golsen*, as refined by *Lardas*, is that the rationale advanced in *Laidlaw's Harley Davidson* is squarely on point with respect to the timeliness of supervisory approval of penalties subject to deficiency procedures.

II.     *Substantial Understatement of Income Tax*

Petitioner reported tax liabilities of $10,719 and $12,716 for 2011 and 2012, respectively.  We are sustaining the determination in the notice of deficiency that he owes increases in tax of $11,464 and $11,403 for 2011 and 2012, respectively.  Petitioner has not raised reasonable cause and good faith as an affirmative defense pursuant to section 6664(c)(1), and it is therefore deemed to be waived.  *See Gustafson v. Commissioner*, 97 T.C. 85, 90 (1991); *see also ATL & Sons Holdings, Inc. v. Commissioner*, 152 T.C. 138, 154 (2019).  Accordingly, respondent has met his burden of producing evidence that petitioner's underpayments were attributable to substantial understatements of income tax, and therefore petitioner is liable for the accuracy-related penalties as determined by respondent.  *See* § 6662(d)(1)(A).

To reflect the foregoing,

*Decision will be entered for respondent as to the section 6662 penalties.*