T.C. Memo. 2017-84

UNITED STATES TAX COURT

NEIL L. WHITESELL AND TRACY L. WHITESELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26230-15.                                    Filed May 18, 2017.

Neil L. Whitesell and Tracy L. Whitesell, pro se.

<u>Joel D. McMahan</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  In a notice of deficiency respondent determined deficiencies

in petitioners' Federal income tax of $2,862,054 and $81,893 for 2011 and 2012,

[*2] respectively.  Respondent also determined an addition to tax for failure to timely file under section 6651(a)(1)[1] of $696,206.50 for 2011.

On October 20, 2016, respondent filed a motion for partial summary judgment under Rule 121.  The issues are:  (1) whether the expiration of the periods of limitation for assessment of deficiencies attributable to the S corporations' income barred respondent from determining flowthrough income for Mr. Whitesell from his wholly owned S corporations and (2) whether petitioners and respondent entered into a contract settling petitioners' income tax liabilities for 2011 and 2012.  The Court holds for respondent on both issues and will grant respondent's motion for partial summary judgment.

## Background

The Court derives the following facts from the parties' pleadings and motion papers, including exhibits and affidavits.  They are stated solely for the purpose of deciding respondent's motion for partial summary judgment and not as findings of fact in this case.  See Rule 1(b); Fed. R. Civ. P. 52(a); Cook v.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]** <u>Commissioner</u>, 115 T.C. 15, 16 (2000), <u>aff'd</u>, 269 F.3d 854 (7th Cir. 2001).

Petitioners resided in Florida when they timely filed their petition.[2]

I.      <u>Petitioners' 2011 and 2012 Federal Tax Returns</u>

On October 12, 2012, petitioners filed their Form 1040, U.S. Individual

Income Tax Return, for 2011.  On October 15, 2013, petitioners filed their Form

1040 for 2012.

Respondent issued to petitioners a notice of deficiency for their 2011 and

2012 tax years on July 27, 2015.  The adjustments in the notice of deficiency

included amounts that flowed through from Mr. Whitesell's wholly owned S

corporations--Whitesell International Corp. (WIC), NLW Holdings, LLC (NLW),[3]

and Whitesell Corp.

WIC and NLW filed their Forms 1120S, U.S. Income Tax Return for an S

Corporation, for 2011 on September 17, 2012.  NLW filed its Form 1120S for

2012 on September 16, 2013.  Respondent did not issue a notice of deficiency to

any of Mr. Whitesell's S corporations.

---

[2]Absent a stipulation to the contrary, this case is appealable to the U.S. Court of Appeals for the Eleventh Circuit, and the Court follows precedent of that court that is squarely on point.  <u>See</u> sec. 7482(b); <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), <u>aff'd</u>, 445 F.2d 985 (10th Cir. 1971).

[3]The parties have stipulated that during all relevant times NLW Holdings, LLC, is a S corporation for Federal income tax purposes.

**[*4]** II.     Petitioners' Offer-in-Compromise

On December 28, 2015, after their petition was filed with the Court,[4] petitioners mailed to the Internal Revenue Service (IRS) a modified Form 656-L, Offer in Compromise (Doubt as to Liability) (OIC), for their Federal income tax liabilities for 2006 through 2012, including liabilities resulting from the related flowthrough entities. Petitioners substantially modified the terms and conditions of the Form 656-L by crossing out sentences in subsections (b) and (d) and crossing out entirely subsections (k), (l), and (m). Along with their OIC, petitioners tendered a $3 million check as satisfaction of their 2006 through 2012 tax liabilities.[5]

---

[4]The petition was filed on October 21, 2015.

[5]In their response to respondent's motion for partial summary judgment, petitioners stated that the $3 million was a calculation of the tax with interest to a specific date. Petitioners did not request from the IRS an amount to pay off their outstanding tax liabilities.

**[\*5]** The IRS received their OIC and deposited the $3 million check.[6]  A few weeks later, on January 21, 2016, the IRS sent petitioners a letter informing them that it was returning their OIC.  On February 9, 2016, the IRS sent petitioners another letter confirming that it had closed its file on their OIC and was in the process of refunding their $3 million deposit because of the modified terms and conditions.  Petitioners have not provided this Court with a copy of the returned check, but they did provide a bank account statement reflecting a deposit of $3 million on April 8, 2016.

## Discussion

Summary judgment is intended to expedite litigation by avoiding unnecessary and expensive trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment is appropriate if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any

---

[6]These facts are inferred in favor of petitioners because this case is before the Court on respondent's motion for partial summary judgment.  See Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  They are derived from a legal memorandum submitted with petitioners' response.  The memorandum was not addressed to petitioners and was prepared by a law firm that is not representing petitioners before this Court.  In addition, the IRS correspondence dated January 21 and February 9, 2016, referenced in the memorandum have not been provided to this Court.

**[\*6]** material fact and that a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  Partial summary adjudication may be made which does not dispose of all issues in the case.  Naftel v. Commissioner, 85 T.C. at 529; see also Rule 121(b).  The moving party bears the burden of proving that no genuine issue of material fact exists and that a decision may be rendered as a matter of law.  Naftel v. Commissioner, 85 T.C. at 529.

In deciding whether to grant summary judgment, the Court views the factual material and inferences drawn from that material in the light most favorable to the opposing party.  Id.  However, the party opposing summary judgment may not simply rest upon the mere allegations or denials of his pleadings.  The adverse party must set forth specific facts, in affidavits or otherwise, showing the existence of a genuine issue for trial.  Rule 121(d); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Petitioners have not identified disputes as to any genuine issue of material fact related to the issues in respondent's motion for partial summary judgment.  Accordingly, partial summary judgment is appropriate in this case.

**[*7] I.    Whether the Periods for Assessment Have Expired**

Respondent determined that Mr. Whitesell had flowthrough income attributable to income originating in transactions of separate taxable S corporations.  Petitioners argue that the S corporations' periods for assessment should govern whether respondent may make a timely adjustment to any of their Forms 1040 for any item related to the corporate entities.  Respondent contends that the period for assessment is determined by the taxpayers' return and not by the returns of related entities whose attributes flow through to the taxpayers' return.

Generally, the Commissioner's authority to assess income tax deficiencies is limited to a period ending three years after the filing of the taxpayers' return.  See sec. 6501(a).  "The statute of limitations is an affirmative defense, and the party interposing it must specifically plead it and carry the burden of showing its applicability."  Robinson v. Commissioner, 117 T.C. 308, 312 (2001); see Rule 142; Alder v. Commissioner, 85 T.C. 535, 540 (1985).  Generally, statutes limiting the assessment and collection of tax are strictly construed in the Government's favor.  Badaracco v. Commissioner, 464 U.S. 386, 391 (1984).

The parties focus on the term "return" in section 6501(a):  "[T]he amount of * * * tax imposed by this title shall be assessed within 3 years after the return was

**[\*8]** filed". (Emphasis added.) Here, the question is whether the "return" referred to is that of the shareholder or the S corporations.

This Court has consistently held that the relevant "return" for determining whether the period for assessment has expired under section 6501(a) is that of the taxpayer with respect to whom the Commissioner seeks to determine a deficiency. See Robinson v. Commissioner, 117 T.C. at 313; Lardas v. Commissioner, 99 T.C. 490, 493 (1992) (and cases cited thereat). The Court has reached that conclusion irrespective of whether the adjustment concerned the transactions of another entity or whether that entity was taxable. See Lardas v. Commissioner, 99 T.C. at 493.

Petitioners' argument appears to focus on a previous conflict amongst U.S. Courts of Appeals that arose around 1992 over whether the period for assessment of a passthrough corporate entity or a shareholder controlled the Commissioner's authority to determine a deficiency for an item flowing from the corporation to the shareholder.[7] In Bufferd v. Commissioner, 506 U.S. 523 (1993), the Supreme

---

[7]The U.S. Courts of Appeals for the Second, Fifth, and Eleventh Circuits held that the filing of the shareholder's return controlled the period for assessment. See Green v. Commissioner, 963 F.2d 783 (5th Cir. 1992), aff'g Brody v. Commissioner, T.C. Memo. 1991-78; Fehlhaber v. Commissioner, 954 F.2d 653 (11th Cir. 1992), aff'g 94 T.C. 863 (1990); Bufferd v. Commissioner, 952 F.2d 675 (2d Cir. 1992), aff'g T.C. Memo. 1991-70. The U.S. Court of Appeals for the Ninth Circuit held that the filing of the passthrough corporate entity's return controlled the period for assessment. See Kelley v. Commissioner, 877 F.2d 756

(continued...)

**[*9]** Court resolved that conflict in the context of a S corporation and its shareholder by holding that adjustments to a shareholder's income are governed by the shareholder's period for assessment. The Supreme Court also interpreted the term "return" in section 6501(a) to be the return of the taxpayer against whom the deficiency is determined or to be assessed. Id. at 527.

After Bufferd was released, Congress enacted the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1284, 111 Stat. at 1038, which in part amended section 6501(a). One of its specifically intended purposes was to clarify this issue with respect to S corporations. See Robinson v. Commissioner, 117 T.C. at 317 (and legislative history cited threat). The legislative history explains that the new provision is intended to clarify that the return that starts the running of the period of limitations on assessment for a taxpayer is the return of the taxpayer and not the return of another "person"[8] from whom the taxpayer has received an item of income, gain, loss, deduction, or credit. See H.R. Rept. No. 105-148, at 609-610 (1997), 1997-4 C.B. (Vol. 1) 323, 931-932; S. Rept. No. 105-33, at 277-278 (1997), 1997-4 C.B. (Vol. 2) 1067, 1357-1358; H.R. Conf. Rept. No. 105-220, at

---

[7](...continued)
(9th Cir. 1989), rev'g T.C. Memo. 1986-405.

[8]Sec. 7701(a)(1) defines "person" to mean and include "an individual, a trust, estate, partnership, association, company or corporation."

[*10] 702-703 (1997), 1997-4 C.B. (Vol. 2) 1457, 2172-2173; see also Robinson v. Commissioner, 117 T.C. at 317.  Therefore, the controlling return for each period of limitation for assessment in this case is petitioners' respective Form 1040--not the corresponding Forms 1120S of the related S corporations.

Petitioners filed their 2011 Form 1040 on October 12, 2012, and their 2012 Form 1040 on October 15, 2013.  The notice of deficiency for petitioners' 2011 and 2012 tax years was issued on July 27, 2015, which was within the 3-year period of limitations on assessment for each year in issue.  Accordingly, respondent is not time barred from assessing income tax attributable to the flowthrough income for Mr. Whitesell for petitioners' tax years 2011 and 2012. See sec. 6501(a); Bufferd v. Commissioner, 506 U.S. 523; Robinson v. Commissioner, 117 T.C. at 319; see also sec. 6503(a) (providing that the period of limitations shall be suspended for the period during which the Secretary is prohibited from making the assessment or a proceeding in Tax Court becomes final and for 60 days thereafter).

II.     Whether Petitioners Settled Their 2011 and 2012 Income Tax Liabilities

In December 2015, after the petition was filed, petitioners tendered to the IRS a $3 million check with their OIC for their tax years 2006 through 2012. Petitioners argue that under the Uniform Commercial Code (UCC), their OIC was

[*11] accepted when the IRS negotiated the check and did not reject their OIC within 90 days of receipt.  Respondent argues that negotiation of a check does not constitute accord and satisfaction and that the UCC does not govern the power of the IRS to administer the Federal income taxation system.

Once a case is docketed in this Court, a well-settled legal framework applies.  That framework comprises general principles regarding the enforcement of settlements in the Tax Court that were set out in Dorchester Indus., Inc. v. Commissioner, 108 T.C. 320, 330 (1997) (quoting Manko v. Commissioner, T.C. Memo. 1995-10), aff'd without published opinion, 208 F.3d 205 (3d Cir. 2000), as follows:

> "For almost a century, it has been settled that voluntary settlement of civil controversies is in high judicial favor.  Williams v. First Natl. Bank, 216 U.S. 582, 595 (1910); St. Louis Mining & Milling Co. v. Montana Mining Co., 171 U.S. 650, 656 (1898).  A valid settlement, once reached, cannot be repudiated by either party, and after the parties have entered into a binding settlement agreement, the actual merits of the settled controversy are without consequence.  This Court has declined to set aside a settlement duly executed by the parties and filed with the Court in the absence of fraud or mutual mistake.  Stamm Intl. Corp. v. Commissioner, 90 T.C. 315 (1988); Spector v. Commissioner, 42 T.C. 110 (1964).  However, a court will not force a settlement on parties where no settlement was intended.  Autera v. Robinson, 419 F.2d 1197 (D.C. Cir. 1969)."
>
> "A settlement is a contract and, consequently, general principles of contract law determine whether a settlement has been reached.  Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436,

[*12] supplemented by 53 T.C. 275 (1969).  A prerequisite to the formation of a contract is an objective manifestation of mutual assent to its essential terms.  Heil v. Commissioner, T.C. Memo. 1994-417; 17A Am. Jur. 2d, Contracts, secs. 27 and 28 (1991); 1 Williston on Contracts, sec. 3:5 (4th ed.1990).  Mutual assent generally requires an offer and an acceptance.  17A Am. Jur. 2d, Contracts, sec. 41 (1991).  'An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'  1 Restatement, Contracts 2d, sec. 24 (1981)."

See also McMullen v. Commissioner, T.C. Memo. 2015-219; FPL Group, Inc. v. Commissioner, T.C. Memo. 2008-144.

In order for the Court to determine that the parties entered into a valid settlement, the Court must determine as a prerequisite whether the parties objectively manifested mutual assent to settle petitioners' income tax liabilities for 2011 and 2012.  In this Court, depending on the facts and circumstances of a case, mutual assent can be objectively manifested by concessions, compromises, and settlements and memorialized in various ways, including the parties' execution of a stipulation of settled issues or a stipulation of settlement.  "[A] settlement stipulation is in all essential characteristics a mutual contract by which each party grants to the other a concession of some rights as a consideration for those secured and the settlement stipulation is entitled to all of the sanctity of any other contract."  Saigh v. Commissioner, 26 T.C. 171, 177 (1956); McMullen v.

**[*13]** Commissioner, at *3.  However, a settlement agreement may be reached through offer and acceptance made by letter, or even in the absence of writing. See Dorchester Indus., Inc. v. Commissioner, 108 T.C. at 330; Haiduk v. Commissioner, T.C. Memo. 1990-506 (holding that formal stipulations of settlement are not absolute prerequisites to an agreement to settle if the parties' intent and the settlement terms are otherwise ascertainable).

The parties have not filed with the Court any document memorializing settlement of the issues for petitioners' tax years 2011 and 2012, nor have the parties manifested mutual assent through an offer and acceptance.  Petitioners argue that their submission of the OIC with the $3 million check, together with the IRS' negotiation of the check, constituted an accord and satisfaction under the UCC and thus meets the mutual assent requirement for a contract.  However, the U.S. Government, as the sovereign, is not bound by such State statutes as the UCC.  See Burnet v. Harmel, 287 U.S. 103, 110 (1932); Tex. Learning Tech. Grp. v. Commissioner, 96 T.C. 686, 693 (1991), aff'd, 958 F.2d 122 (5th Cir. 1992); Bear v. Commissioner, T.C. Memo. 1992-690, 1992 WL 354004, at *2, aff'd without published opinion, 19 F.3d 26 (9th Cir. 1994).

In any event, petitioners' submission of the OIC on December 28, 2015, does not illustrate the IRS' assent.  By letter dated January 21, 2016, the IRS

[*14] notified petitioners that their OIC would be returned along with their $3 million deposit. The IRS also notified petitioners in a second letter dated February 9, 2016, that the reason for rejecting the OIC was petitioners' modifying its terms and conditions. Under a contract law analysis, respondent rejected petitioners' offer; thus, there was no settlement. See, e.g., Angle v. Commissioner, T.C. Memo. 2016-27.

Petitioners further argue that by cashing their check, the IRS accepted their OIC. This argument is incorrect. The IRS cashing a check does not necessarily mean that the IRS has accepted the offer. See Currier v. Commissioner, T.C. Memo. 2011-113 (holding that the taxpayer's check did not constitute full payment of his tax liabilities and the taxpayer did not enter into a binding agreement with the Commissioner to compromise his tax liabilities); Kehew v. Commissioner, T.C. Memo. 1983-354 (holding that the simple acceptance and cashing of a check tendered by a taxpayer does not represent a final determination binding upon the Government as the recipient of the funds).

Additionally, petitioners understood at the time they submitted their OIC that their payment could be returned. On their modified Form 656-L, petitioners offered to pay $3 million and hand wrote "pursuant to section 4 Terms - 4b". Section 4(b) of the Terms states: "If the IRS rejects or returns the offer * * *, the

[*15] IRS will return any amount paid with the offer."  Under IRS guidelines for OICs, payments or deposits received with the OIC are either placed in a non-interest-bearing account, stamped nonnegotiable and returned, or posted to a taxpayer's account and processed through "paper check conversion".  See Internal Revenue Manual (IRM) pt. 5.8.2.8 (July 28, 2015) (sorts and payment processing).  Once a determination has been made with respect to an OIC, deposits on accepted OICs will be applied against the taxpayer's liability and deposits on withdrawn, rejected, or returned offers will be refunded to the taxpayer.  See id. pt. 5.19.7.2.12.3 (Jan. 8, 2014) (disposition of OIC deposits).  Respondent rejected petitioners' OIC and subsequently returned their $3 million deposit in accordance with those guidelines.

Alternatively, petitioners argue that their OIC was deemed accepted under the UCC because their offer was not rejected within 90 days.  The facts surrounding this OIC and the IRS' response--set forth in petitioners' response to respondent's motion for partial summary judgment, see supra note 5--clearly show the IRS' timely rejection of their OIC and return of their $3 million deposit.  See sec. 7122(f); Hornbacker v. Commissioner, T.C. Memo. 2016-65, at *22 (holding that the IRS has up to 24 months to process an OIC).  More importantly, the U.S. Government, as the sovereign, is not bound by State statutes such as the UCC.

**[\*16]** <u>See</u> <u>Burnet v. Harmel</u>, 287 U.S. at 110; <u>Bear v. Commissioner</u>, 1992 WL 354004, at \*2. Accordingly, there is no objective manifestation of mutual assent by the parties to settle petitioners' tax liabilities for 2011 and 2012 and no settlement for the Court to enforce.

III.   <u>Conclusion</u>

Before the Court is a petition for redetermination of petitioners' 2011 and 2012 Federal income tax deficiencies resulting from flowthrough income from Mr. Whitesell's wholly owned S corporations. The notice of deficiency for petitioners' 2011 and 2012 tax years was issued within both periods of limitation for assessment.

The parties have not filed a settlement stipulation with the Court as to petitioners' 2011 and 2012 tax years; and there is no settlement or contract to settle their income tax liabilities for 2011 and 2012 for the Court to enforce because their OIC was rejected timely.

Accordingly, the Court will grant respondent's motion for partial summary judgment. The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

**[*17]** To reflect the foregoing,

<u>An appropriate order will be issued</u>.