T.C. Memo. 2019-126

UNITED STATES TAX COURT

NEIL L. WHITESELL AND TRACY L. WHITESELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26230-15.                              Filed September 24, 2019.

P-H owned a 100% interest in WIC, an S corporation.  In 2008, a Michigan trial court entered a civil monetary judgment against WIC.  For tax years 2008, 2009, and 2010, R allowed WIC $10,982,856 in deductions for the judgment and interest thereon.  In 2011, the Michigan Court of Appeals reversed the trial court and remanded the case.  In 2015, R determined deficiencies for 2010 and 2011.  The deficiency for 2011 was premised in part on R's determination that WIC must include $10,982,856 in income for tax year 2011 because 2011 was the year in which the Michigan Court of Appeals reversed the judgment.  Ps filed a petition in this Court in October 2015 and filed an amended petition in December 2015.  In neither pleading did Ps challenge R's determination of the amount of income inclusion ($10,982,856) or the year of inclusion (2011).  Three years later, in October 2018, Ps moved to file an amendment to the amended petition to assert that WIC had settled the Michigan lawsuit in 2013 and that the income inclusion had to be made for the 2013 tax year.  By the time Ps filed their October 2018 motion, the three-year period for assessing tax for Ps' 2013 tax year had expired.

[*2]   Held:  Ps' motion will be denied.


William M. Sharp, Alexander R. Olama, and James P. Dawson, for

petitioners.

Joel D. McMahan, Mark J. Tober, and Christopher A. Pavilonis, for

respondent.


MEMORANDUM OPINION


MORRISON, Judge:  Pursuant to section 6212(a),[1] the respondent (the

"IRS") determined deficiencies in tax for petitioners Mr. Neil L. Whitesell and

Ms. Tracy L. Whitesell for tax years 2011 and 2012 in the respective amounts of

$2,862,054 and $81,893.  The IRS also determined an addition to tax under

section 6651(a)(1) for 2011 of $696,206.50.  The main adjustment giving rise to

the deficiency for 2011 was the IRS's determination that Whitesell International

Corp. ("WIC"), an S corporation in which Mr. Whitesell owned a 100% interest,

must include $10,982,856 in its income for 2011.  The Whitesells timely

---

[1]Unless otherwise indicated, all references to sections are to the Internal Revenue Code of 1986, as amended and in effect for the 2011 and 2012 years, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

**[\*3]** petitioned this Court, pursuant to section 6213(a), for redetermination of the deficiencies and the addition to tax. They also filed an amended petition. Now before us is a motion filed by the Whitesells on October 12, 2018, for leave to file an amendment to the amended petition premised on the theory that if the $10,982,856 amount is includable in WIC's income, it is includable only for the 2013 tax year. We will deny the motion.

Background

The background facts set forth below are derived from (1) court papers in this case (including the pleadings and the stipulation of facts) and the exhibits referred to and attached to the stipulation of facts; (2) uncontroverted written representations by the parties (i.e., the Whitesells and the IRS); and (3) certain portions of the 2011 opinion of the Michigan Court of Appeals in Whitesell Int'l Corp. v. Whitaker, No. 287569, 2011 Mich. App. LEXIS 99 (Jan. 18, 2011), that, except as noted below, the parties agree we can accept as true. The background facts are stated solely for deciding the Whitesells' motion and are not findings of fact for purposes of deciding this case. See Rule 1(b); Fed. R. Civ. P. 52(a); Cook v. Commissioner, 115 T.C. 15, 16 (2000), aff'd, 269 F.3d 854 (7th Cir. 2001).

**[\*4]** <u>The Michigan litigation and the tax reporting of the Michigan litigation</u>

During the relevant periods, Mr. Whitesell owned a 100% interest in three S corporations:  WIC, Whitesell Corp., and NLW Holdings, LLC ("NLW Holdings").

In June 2005, WIC filed a lawsuit against William A. Whitaker and two other defendants in a Michigan trial court.  <u>Whitesell Int'l Corp.</u>, 2011 Mich. App. LEXIS 99, at \*11.  WIC alleged that Whitaker had disclosed a trade secret:  the "Stamptech process" for manufacturing interconnected pierce nuts.  <u>Id.</u> at \*2-\*4.  Pierce nuts are "a type of fastener that pierce directly into sheet metal and provide a threaded base on which to affix material to the sheet metal."  <u>Id.</u> at \*3.  Interconnected pierce nuts are connected to each other with pieces of wire.  <u>Id.</u>  Whitaker filed a counterclaim against WIC, alleging that WIC had filed its lawsuit against Whitaker solely to prevent competition.  <u>Id.</u> at \*2-\*3, \*20-\*21.  The Michigan trial court dismissed WIC's complaint on grounds of res judicata.  <u>Id.</u> at \*2.  Whitaker's counterclaim against WIC remained pending.  <u>Id.</u>  The main issue in Whitaker's counterclaim was whether WIC reasonably believed the Stamptech process was a trade secret when it filed its lawsuit against Whitaker.  <u>Id.</u> at \*37.

**[*5]**  After a jury trial, Whitaker moved for a partial directed verdict on the narrow issue of whether the Stamptech process constituted a trade secret.  Id. at *18, *33.  The Michigan trial court granted the motion and instructed the jury that the Stamptech process was not a trade secret.  Id. at *20, *37-*38.  The jury returned a verdict in Whitaker's favor and against WIC.  Id. at *21.  In essence, the jury, having been instructed by the judge that the Stamptech process was not a trade secret, found that WIC did not reasonably believe the Stamptech process was a trade secret.  See id. at *37-*38.

On January 30, 2008, the Michigan trial court entered judgment in Whitaker's favor and against WIC in the amount of $9,266,684.86, or $9,266,685 when rounded to the nearest dollar.  This amount comprised the following six jury awards:  $6 million in damages for tortious interference with business relationship or expectancy; $500,000 for violation of the Michigan Antitrust Reform Act, MCL sec. 445.773 et seq.; $1,862,671.37 in attorney's fees; $205,440.61 in costs; $36,600 in expert-witness costs; and $661,972.88 in prejudgment interest.  Whitesell Int'l Corp., 2011 Mich. App. LEXIS 99, at *1-*2.

WIC appealed the judgment of the Michigan trial court to the Michigan Court of Appeals.  Id. at *1.

**[*6]** On or about May 29, 2009, WIC filed its Form 1120S, "U.S. Income Tax Return for an S Corporation", for tax year 2008, the year judgment was entered in Whitaker's favor and against WIC. The parties have stipulated that WIC deducted $9,822,753 for the judgment on its 2008 tax return. This amount apparently included both the judgment and interest on the judgment.

On or about June 22, 2010, WIC filed its Form 1120S for 2009. WIC did not report a deduction for interest on the judgment in the Michigan case.

On or about September 14, 2011, WIC filed its Form 1120S for 2010. WIC did not report a deduction for interest on the judgment in the Michigan case.

On January 18, 2011, the Michigan Court of Appeals held that the Michigan trial court erred in granting Whitaker's motion for a partial directed verdict on the question of whether the Stamptech process was a trade secret. Id. at *32-*38. The Michigan Court of Appeals reversed the "verdict" of the Michigan trial court, id. at *2, and remanded the case for further proceedings, id. at *38.[2]

---

[2]Our finding that a remand was ordered by the Michigan Court of Appeals is based on its opinion, which stated that the case was "[a]ffirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion." Whitesell Int'l Corp. v. Whitaker, No. 287569, 2011 Mich. App. LEXIS 99, at *38 (Jan. 18, 2011). The IRS objected to our accepting as true the statement by the Michigan Court of Appeals opinion that it had remanded the case. The IRS contended that this statement was contrary to a stipulation in our case: that WIC's appeal was successful in 2011 and relieved it of the judgment. See infra pp.

(continued...)

**[*7]**   On September 17, 2012, WIC filed its Form 1120S for 2011.  WIC did not report any income to account for the Michigan Court of Appeals reversal of the Michigan trial court judgment.

On October 12, 2012, the Whitesells filed their Form 1040, "U.S. Individual Income Tax Return", for 2011.

WIC's Form 1120S for the next year, 2012, is not among the court papers.

On October 15, 2013, the Whitesells filed their Form 1040 for 2012.

In 2013, WIC and Whitaker settled the Michigan case, according to the Whitesells' October 12, 2018 motion for leave to file an amendment to the amended petition, and according to the proposed amendment.

Examination

The IRS examined the Whitesells' tax returns.  The parties entered into the following stipulations concerning the IRS examination:

---

[2](...continued)
17-18.  However, we do not believe the stipulation is contrary to the fact that the Michigan Court of Appeals ordered a remand.  The Michigan Court of Appeals reversed the verdict of the Michigan trial court.  Thus, WIC was successful in its appeal and was relieved of liability for the $9,266,684.86 judgment even though the liability could have been reimposed by the trial court on remand.  Having thus rejected the IRS's contention, we accept as true the statement in the opinion of the Michigan Court of Appeals that it remanded the case.

[*8] ● "For its 2008 income tax year, WIC was allowed a deduction of $509,118 for interest associated with the adverse judgment it received in the civil trial."

● "For its 2009 income tax year, WIC was allowed a deduction of $585,948 for interest associated with the adverse judgment it received in the civil trial."

● "For its 2010 income tax year, WIC was allowed a deduction of $621,105 of interest associated with the adverse judgment it received in the civil trial."

Notice of deficiency

On July 27, 2015, the IRS mailed a notice of deficiency to the Whitesells for 2011 and 2012. The notice of deficiency made a $10,982,856 adjustment to WIC's income for 2011. The adjustment appeared on line 1.c of Form 4549-A, "Income Tax Examination Changes", which is part of the notice of deficiency. The notice of deficiency explained that WIC had been allowed a deduction for "legal fees in prior tax years", that WIC was "no longer liable for these fees", and that WIC "must increase" its "ordinary income by these fees" for tax year 2011. The deductions allowed in prior years were described in the notice of deficiency as follows:

**[*9]** • $9,266,685 for "Judgment--Allowed in 2008";

• $509,118 for "Allowable Interest Expense--2008";

• $585,948 for "Allowable Interest Expense--2009"; and

• $621,105 for "Allowable Interest Expense--2010".

The notice of deficiency thus concluded that WIC had been allowed $10,982,856 in deductions for the 2008 judgment (and interest on the judgment) for the years 2008-10.[3]

The Whitesells agree that WIC was allowed $10,982,856 in deductions for the years 2008-10 as described in the notice of deficiency. Thus, we have enough information to compare the deductions allowed to the deductions reported by WIC on its Forms 1120S. The comparison is as follows:

---

[3]$9,266,685 + $506,118 + $585,948 + $621,105 = $10,982,856.

**[*10]**

Deductions for Michigan judgment and interest on judgment:  2008-10

| Year | Deduction | As reported on WIC Forms 1120S | As adjusted and allowed by IRS |
|---|---|---|---|
| 2008 | Judgment | N/A[1] | $9,266,685 |
| 2008 | Interest | N/A[1] | 509,118 |
| 2008 | Judgment + interest | $9,822,753 | 9,775,803 |
| 2009 | Interest | -0- | 585,948 |
| 2010 | Interest | -0- | 621,105 |
| Total | | 9,822,753 | 10,982,856 |

[1]The deductions for judgment and interest for 2008 were not separately reported.  They were reported as a total amount--$9,822,753.

The notice of deficiency determined that WIC was required to include $10,982,856 in its income for 2011.

The notice of deficiency also made a noncomputational adjustment to WIC's income for 2011.  It determined that WIC was entitled to additional (i.e., unreported) depreciation deductions of $425,289.  Thus, the total adjustment to WIC's income for 2011 was $10,557,567, or $10,982,856 minus $425,289. Because Mr. Whitesell owned the entire interest in WIC and the Whitesells were married and filing jointly, the entire income adjustment passed through to the Whitesells.

[*11] The notice of deficiency also made the following adjustments to the Whitesells' income:

| Year | Adjustment by notice of deficiency |
|------|-----------------------------------|
| 2011 | Increased the income of NLW Holdings by $1,011,784 |
| 2012 | Increased the income of NLW Holdings by $1,369,927 |
| 2012 | Decreased the income of WIC by $51,329 |
| 2011 | Decreased the income of Whitesell Corp. by $98,096 |
| 2012 | Decreased the income of Whitesell Corp. by $59,628 |
| 2011 | Allowed a $1,914,166 additional net-operating loss carried forward from 2010 to 2011 |
| 2012 | Disallowed a net-operating-loss carryforward from 2011 to 2012 of $210,858 |
| 2011 | Disallowed $70 in itemized deductions |
| 2012 | Allowed $134,494 of additional itemized deductions |
| 2012 | Determined that $1,564 in IRA distributions was includable in income |
| 2011 | Determined that $20,413 in interest income was includable in income |
| 2012 | Disallowed a $85,828 domestic-production-activities deduction |
| 2012 | Determined that $290 in dividend income was includable in income |

All dollar amounts in the notice of deficiency to which we refer, except for the amount of the section 6651(a)(1) addition to tax, end in ".00".

**[*12]** The notice of deficiency stated: "This report supersedes the report dated 04/01/2015".

Procedural history

On October 15, 2015, the Whitesells, residents of Florida, filed a timely petition for redetermination of the deficiencies and the addition to tax. The Whitesells were unrepresented at the time they filed their petition with the Court.

On November 19, 2015, the Court ordered the Whitesells to file a proper amended petition, including clear and concise assignments of each and every error they allege was committed by the IRS in the notice of deficiency, and clear and concise statements of every fact upon which they base each assignment of error.

On December 14, 2015, the Whitesells filed an amended petition in response to the Court's November 19, 2015 order. They alleged that the IRS failed to assess tax against NLW Holdings, WIC, and Whitesell Corp., for 2011, and as a result, the period for assessing tax had closed.

With respect to the $10,982,856 adjustment to WIC's income for 2011, a table in the amended petition showed that the adjustment was "Disputed" by the Whitesells and that their "Comment on Error by IRS Position" was that the "IRS failed to assess 1120 taxpayer timely". The amended petition further explained that the "facts and information supporting our position" with respect to the

[*13] $10,982,856 adjustment were that "reconsideration was Superceded [sic]". As can be discerned from other portions of the amended petition, this is shorthand for the Whitesells' argument that (1) during the examination the IRS made an assessment of tax "on" or "of" WIC for WIC's 2011 tax year and (2) the notice of deficiency superseded the assessment made during the examination, thus nullifying the assessment. Although the amended petition challenged the adjustment to WIC's income for 2011 on grounds of an alleged lack of assessment, it did not dispute the amount of the adjustment or the proper year for adjustment.[4]

On December 28, 2015, the Whitesells mailed to the IRS a modified Form 656-L, "Offer in Compromise", offering to "compromise" (or settle) their 2006-12 income tax liabilities for $3 million. The Whitesells enclosed a $3 million check with the Form 656-L.

On December 31, 2015, the IRS received the Form 656-L and deposited the $3 million check.

On January 21, 2016, the IRS sent the Whitesells a letter stating that it was returning the Form 656-L and the $3 million.

---

[4]Nor could the original, unamended petition be construed to dispute the amount of the adjustment or the proper year for adjustment.

**[\*14]** On February 5, 2016, the IRS filed its answer to the amended petition.

On February 9, 2016, the IRS sent the Whitesells a letter stating that it had closed its file on the Form 656-L and that it was in the process of refunding the $3 million.

On or before April 8, 2016, the IRS refunded the $3 million to the Whitesells.

On August 24, 2016, the IRS filed a Rule 91(f) motion requesting that the Court order the Whitesells to show cause why respondent's proposed stipulation of facts should not be deemed established. Paragraph 3 of the proposed stipulation of facts stated: "Petitioners in this proceeding are disputing only the flow-through adjustments reflected in the notice of deficiency with respect to entities owned by petitioners."

On September 1, 2016, the Court ordered the Whitesells to show cause why the proposed facts in the stipulation of facts should not be deemed established and why the exhibits referred to and attached to the stipulation of facts should not be deemed admitted into evidence.

On September 29, 2016, the Whitesells responded to the September 1, 2016 order to show cause, contending that the IRS had not "issued any assessment to WIC regarding its 2011 Form 1120S." The Whitesells alleged that "the three-year

**[\*15]** statute of limitations on assessment of WIC's 2011 tax year expired on September 15, 2015 without a valid assessment by the IRS." They also made clear they did not dispute the amount ($10,557,567) or year (2011) of the adjustment. Addressing paragraph 3 of the proposed stipulation of facts, the Whitesells made the following statement:

> Subject to the Petitioners [sic] position on SNOD that the statue [sic] is closed on all 1120s assessments, see Exhibit 4-P, and Offer in Compromise Acceptance of all 2006-2012 tax years IRS claims, see Exhibit 5-P, the Petitioners are not disputing all of the amounts listed in Form 4549-A, copy attached as Exhibit 6-P, or summarized items in Respondent Stipulation on the 2011 tax adjustments. The following details Petitioners specific agreement at the line level and amount:
>
> 2011 Tax Adjustments Petitioner [sic] Agrees
>
> \*         \*         \*         \*         \*         \*         \*
>
> Petitioners agree to the amount on Line 1.c legal expense of $10,557,567 except amount is off by typo error of $10,000 and if there is no adverse whipsaw effect on 2009 and 2010 returns where the IRS assessment in 2009 added expense of $585,948 and 2010 added expense of $621,105 for interest expense allowed by the IRS.

Attached to the Whitesells' response were several documents, including exhibits marked by the Whitesells as Exhibit 4-P, Exhibit 5-P, and Exhibit 6-P, referenced in the quotation above. These exhibit numbers were not assigned by the Court. Exhibit 4-P is a September 13, 2016 legal memorandum explaining the Whitesells'

[*16] argument that the IRS failed to assess tax "against" WIC for tax year 2011. Exhibit 5-P is a September 8, 2016 legal memorandum explaining the Whitesells' argument that the IRS settled their income tax liabilities for the 2006-12 years by accepting their $3 million offer-in-compromise. The substance of that argument is that under the Uniform Commercial Code, the deposit of the $3 million check by the IRS constituted acceptance of the offer-in-compromise. Exhibit 6-P is a copy of a Form 4549-A that is part of the notice of deficiency. Line 1.c of the Form 4549-A shows a $10,557,567 adjustment for "Sch. E--Whitesell International Corporation". The Whitesells additionally stated in their response that they agreed that the "adjustment made on line 1.c of the Form 4549-A attached to the notice of deficiency in the amount of $10,557,567 is correct", except they added the following caveat: "10,000 off?". The Whitesells also asserted that WIC reported an increase in its income on its 2011 nontax financial statements to reflect the favorable disposition of the Michigan lawsuit. They asserted that the reason WIC did not report an increase in its taxable income for 2011 was that the IRS had instructed them not do so because an examination for the 2008 year was then pending.

[*17] On October 18, 2016, the Whitesells and the IRS agreed to a stipulation of facts. Some of the stipulated facts have already been discussed. As relevant here, the parties made the following stipulations:

- In 2008, WIC received an unfavorable judgment in the Michigan trial court, a copy of which was attached to the stipulation of facts;

- WIC deducted $20,177,665 on line 19 of its 2008 Form 1120S for "Other Deductions";

- The deduction on line 19 of WIC's 2008 Form 1120S included $10,943,252 in "legal and other professional fees";

- $9,822,753 of the $10,943,252 deduction corresponds to the Michigan court judgment;

- For 2008, WIC was allowed a $509,118 deduction for interest associated with the judgment;

- For 2009, WIC was allowed a $585,948 deduction for interest associated with the judgment;

- For 2010, WIC was allowed a $621,105 deduction for interest associated with the judgment;

- In 2011, WIC's "appeal of the civil judgment was successful, relieving it of responsibility for each of the amounts previously

**[*18]**  allowed as deductions"; and WIC did not report income for 2011 to reflect the "judgment relief and reversal of the prior deductions related to that civil judgment."

The amounts of the awards in the copy of the judgment attached to the stipulation total $9,266,685 (as rounded to the nearest dollar).

On October 20, 2016, the IRS filed a motion for partial summary judgment, arguing that the limitations period on assessment had not expired with respect to either the 2011 or 2012 tax year. The IRS also argued that it had not accepted the Whitesells' $3 million offer-in-compromise.

On October 24, 2016, the Court ordered the Whitesells to file a response to the IRS's motion for partial summary judgment. The Court also ordered the motion set for hearing on November 14, 2016.

On October 24, 2016, the Court ordered that its September 1, 2016 order to show cause was discharged, i.e., that the order had been satisfied.

On November 7, 2016, the Whitesells filed a response to the IRS's motion for partial summary judgment, arguing that "the IRS never assessed the 1120S taxpayers at all." Addressing the $10,972,856 amount, the Whitesells described the correct tax treatment of this amount as "recognizing the income in the appropriate year"--meaning 2011. However, the Whitesells contended that "the

**[\*19]** income in 2011 would not be allowed because the statute had closed." The Whitesells stated that the examiner had agreed with the Whitesells' own position during the examination: "The field agent changed his assessment to agree with the taxpayer on only 1 of 4 of the accrued expenses and now allowed $10,972,856 in 2008 as an expense and agreed with the taxpayer's proposal to report the income in 2011." The Whitesells also argued that the IRS had settled the case by accepting their $3 million offer-in-compromise.

On November 14, 2016, the Court held a hearing on the IRS's motion for partial summary judgment. Mr. Whitesell, but not Ms. Whitesell, appeared at the hearing. Early in the hearing, IRS counsel likened the offer-in-compromise and assessment-timing issues to roadblocks that were impeding the resolution of this case. He stated that "there's this roadblock that's keeping us from getting any further, and if we can stipulate that the only thing at issue is the net operating loss deduction, that's fine." After the Court heard argument on the motion for partial summary judgment, IRS counsel again discussed narrowing the remaining issues: "The, the next thing I'd like to know if we can resolve on the record today is narrowing the issues." The Court sought to elicit the parties' positions on which issues were in dispute. IRS counsel stated:

[*20] I believe that subject to the Uniform Commercial Code [referring to the argument that the IRS had accepted the Whitesells' offer-in-compromise, see Whitesell v. Commissioner, T.C. Memo. 2017-84, at *10-*11] and statute of limitations arguments, Petitioners agreed with the remaining adjustments. And I would love to be able to walk out of here today knowing whether that's a fact.

The Court then asked Mr. Whitesell: "[W]hat is your standing on the rest of the adjustments,[5] subject to me making a decision on the statute of limitations and the UCC [the Uniform Commercial Code]?" Mr. Whitesell responded: "Outside of the NOLD [net-operating-loss deduction], Your Honor"? The Court answered: "Outside of the net operating loss". Mr. Whitesell then stated: "Yes, we are in agreement on the other adjustments. And we put that in writing too." Mr. Whitesell explained that the Whitesells had put their agreement "in writing" in their September 29, 2016 response to the Court's order to show cause. Mr. Whitesell also stated that the Whitesells had also expressed their agreement with the adjustments (other than the net-operating-loss adjustments) in an earlier telephone conference held between the Court and the parties.

On May 18, 2017, the Court issued a Memorandum Opinion granting the IRS's motion for partial summary judgment. Whitesell v. Commissioner, T.C. Memo. 2017-84. The Court held that the IRS was not time barred from assessing

---

[5]This word erroneously appeared as "judgments" in the transcript.

**[*21]** income tax attributable to flowthrough income from the three S corporations for the Whitesells' tax years 2011 and 2012. Id. at *10. The Court also held that the Whitesells' offer-in-compromise had not been accepted by the IRS. Id. at *10-*16.

On October 26, 2017, attorneys John W. Hackney and David D. Aughtry entered appearances for the Whitesells. The Whitesells had hitherto been representing themselves.

On October 12, 2018, the Whitesells filed the present motion for leave to file an amendment to the amended petition. The motion explained that the Michigan case was not settled until 2013, and that under section 1.461-2(a)(3), Income Tax Regs., refunds of contested liabilities are included in gross income "when the contest is settled." The amendment the Whitesells wish to file would allege that the Michigan case was not resolved until 2013, when WIC and Whitaker settled the Michigan case. The amendment would also allege: "The amounts WIC previously paid for the Whitaker [j]udgment and related interest amounts do not constitute gross income to WIC in 2011 or 2012".

The Whitesells and the IRS filed additional court papers regarding the present motion.

**[*22]** On May 2, 2019, the IRS mailed a notice of deficiency to the Whitesells for 2013, determining that there should be a $10,982,856 income inclusion in WIC's income for 2013. In the notice, the IRS explained the notice of deficiency was being issued as a protective measure should the Court determine in this case that the $10,982,856 should not be included in WIC's income in 2011 or 2012--the years at issue in this case.

On July 31, 2019, the Whitesells filed a petition for redetermination of the deficiency for 2013. The case was assigned docket No. 14258-19. In the petition, the Whitesells argue that the notice of deficiency for 2013 was untimely because it was mailed more than three years after their 2013 tax return was filed.

On August 7, 2019, William M. Sharp substituted his appearance for John Hackney's appearance.

Also on August 7, 2019, David D. Aughtry filed a motion to withdraw as the Whitesells' counsel. The Court granted this motion on August 12, 2019.

On August 8, 2019, Alexander R. Olama filed an entry of appearance.

On August 20, 2019, James P. Dawson filed an entry of appearance.

**[*23]**                                      Discussion

Rule 41(a) provides in pertinent part:

> A party may amend a pleading once as a matter of course at any time before a responsive pleading is served.  * * * Otherwise a party may amend a pleading only by leave of Court or by written consent of the adverse party, and leave shall be given freely when justice so requires.

Whether a motion seeking amendment should be allowed lies within the sound discretion of the Court.  Rule 41(a); Estate of Quick v. Commissioner, 110 T.C. 172, 178 (1998), supplemented by 110 T.C. 440 (1998).  In determining the justice of allowing an amendment, we must examine the particular circumstances in the case before us.  Estate of Quick v. Commissioner, 110 T.C. at 178.  We consider, among other factors, whether an excuse for the delay exists and whether the opposing party would suffer unfair surprise, disadvantage, or prejudice if the motion to amend were granted.  Id.

1.    Excuse for delay

The Whitesells seek leave to file an amendment to their amended petition to allege that the amounts deducted for years 2008-10, relating to the Michigan judgment, are not includable in WIC's income for 2011 or 2012.  They allege that they did not seek to plead this theory earlier than their October 12, 2018 motion

[*24] because they were unrepresented until October 26, 2017, and they were "overwhelmed by the Tax Court process, including procedural matters".

Although it is true that during the early stages of this case the Whitesells were unrepresented, they were assisted by accounting and legal professionals behind the scenes. Robert Wiese, a certified public accountant who had represented the Whitesells before the IRS, continued to advise them during this Tax Court case. Wiese is an officer of Whitesell Corp., WIC, and NLW Holdings.

The Whitesells were also assisted during this Tax Court case by the law firm of Thompson Coburn. The law firm's assistance was also provided behind the scenes; no one from the firm entered an appearance. On September 13, 2016, an attorney from the firm, Richard L. Lawton, wrote a legal memorandum to Wiese concluding that the notice of deficiency was invalid as to the inclusion in WIC's income for 2011. The reason Lawton gave was that the IRS had failed to assess tax "against" WIC for tax year 2011. Moreover, on September 8, 2016, Wiese received a second legal memorandum, this time from attorneys Lawton, Matthew I. Hafter, and Emily L. Jenkinson, of the same law firm. That memorandum concluded that the IRS had accepted the $3 million offer-in-compromise. The

[*25] Whitesells incorporated these two legal memoranda into their September 29, 2016 response to the IRS's motion for partial summary judgment.[6]

Because the Whitesells received assistance from Wiese and the Thompson Coburn law firm, we are not persuaded that the Whitesells' pro se (i.e., unrepresented) status excuses their delay in raising the argument they now seek to make in their proposed amendment to amended petition.

2.  Surprise

The IRS is unfairly surprised by this new argument. Throughout these proceedings, the Whitesells have consistently explained that their disagreement with the 2011 income inclusion for the Michigan judgment was founded on two theories: that the period of limitation for assessment had expired for WIC's 2011 tax year and that the IRS had accepted their $3 million offer-in-compromise.

In their December 2015 amended petition, the Whitesells explained that they disagreed with the 2011 adjustment to WIC's income because the IRS failed to "timely" assess tax "against" WIC.

In their September 2016 response to our order to show cause concerning the IRS's Rule 91(f) motion, the Whitesells reiterated this assessment argument.

---

[6]The legal memoranda were identified by petitioners in their September 29, 2016 response as Exhibits 4-P and 5-P, respectively.

[*26] Their response explained that except for the assessment and offer-in-compromise arguments, they "Agreed" with the 2011 WIC adjustment determined in the notice of deficiency for the Michigan judgment. They also stated that the adjustment was "correct".

In their November 2016 response to the IRS's motion for partial summary judgment, the Whitesells reiterated their arguments that the IRS had failed to assess tax "against" WIC for 2011 and that the IRS had accepted their $3 million offer-in-compromise. They explained that but for these arguments, the correct tax treatment of the Michigan case was income recognition for 2011. They explained that recognizing income for 2011 had been their own position during the IRS examination.

During the November 14, 2016 hearing, Mr. Whitesell assured the Court that they had no arguments in this case other than (1) the assessment argument, (2) the offer-in-compromise argument, and (3) the net-operating-loss deductions argument.

Until the Whitesells filed the instant motion, the IRS was unaware of the Whitesells' argument that the proper year for inclusion is 2013, rather than 2011. The IRS is unfairly surprised.

**[\*27]** 3. <u>Prejudice</u>

We also conclude that the IRS would be unfairly prejudiced by the proposed amendment. The proposed amendment alleges that the income inclusion relating to the Michigan case should be made, if ever, for the 2013 tax year. But the Whitesells do not dispute the IRS's claim that the three-year period for assessment has ended as to their 2013 tax year.[7]

In determining the potential for unfair prejudice, the question is whether allowing a party to add a new issue by a later amendment, rather than inclusion in the initial pleading, works an unfair disadvantage to the other party. <u>Ax v. Commissioner</u>, 146 T.C. 153, 168 (2016). The issue the Whitesells wish to raise is the argument that 2013 was the only year for which there should be an income inclusion. Had they made this argument in their amended petition, which was filed in December 2015, the IRS could have made an assessment for the 2013 tax year.[8] But if the Whitesells are allowed to file their amendment to raise the issue

---

[7]Sec. 6501(a) provides that an assessment must be made within three years after the date the relevant return was filed. If the timing of the Whitesells' filing of their income tax return for 2013 was similar to their timing for the 2011 and 2012 returns, that would mean that they filed their 2013 return in October 2014. That would mean that the three-year period for assessment expired in October 2017.

[8]To assess a deficiency for 2013, the IRS must mail a notice of deficiency
(continued...)

[*28] now, the IRS would be prejudiced because the three-year period for assessing the tax for 2013 has ended.[9] Cf. Steiner v. Commissioner, T.C. Memo. 1995-122 (the IRS issued a notice of deficiency for the 1984 tax year determining that a conversion of stock occurred in 1984; in 1990 the taxpayers filed a petition agreeing that the conversion occurred in 1984; the taxpayers later sought to amend their petition to allege that the conversion occurred in 1985; the Court allowed the amendment because (among other reasons) the three-year period for assessment for the 1985 year was already closed when the taxpayers had filed their petition; therefore, even if the IRS had known of the taxpayers' new theory (that the conversion occurred in 1985) when the petition was filed, the IRS would still have had to rely on the six-year period for assessment because the three-year period had expired).

---

[8](...continued) for 2013, as it did in May 2019. See sec. 6213(a). The notice of deficiency suspends the running of the period for assessment. Sec. 6503. But the notice of deficiency must be issued before the end of the period for assessment. Sec. 6213(a).

[9]Although there are exceptions to the three-year period for assessment, such as, for example, where the taxpayer omits 25% of gross income from the return, see sec. 6501(e)(1)(A)(i), it would prejudice the IRS for it to have to prove the applicability of an exception.

The Whitesells do not suggest that mitigation under sec. 1311 would be available, so we do not address it.

**[*29]** We conclude that justice does not require that the Whitesells be permitted to file their amendment to amended petition.  <u>See</u> Rule 41(a).[10]

To reflect the foregoing,

<u>An order will be issued denying</u>

<u>petitioners' October 12, 2018, motion for</u>

<u>leave to file amendment to amended</u>

<u>petition, as supplemented</u>.

---

[10]The IRS also argues that permission to amend the amended petition should be denied on the ground that the Whitesells judicially admitted that the $10,982,856 in income was properly included for 2011.  We need not reach this argument.